Felix D'AVIGNON *v.* ARKANSAS RACING COMMISSION et al

82-99                                          651 S.W.2d 87

Supreme Court of Arkansas
Opinion delivered May 31, 1983

*Rubens & Rubens,* by: *Kent J. Rubens,* for appellant.

*Byron Freeland* of *Mitchell, Williams & Selig,* for appellees.

THOMAS M. BRAMHALL, Special Justice. Felix D'Avignon appeals from a judgment affirming a decision of the Arkansas Racing Commission suspending his trainer's license for sixty (60) days. On June 19, 1975, Stylish Kim, a dog trained by D'Avignon, placed first in the fourth race at Southland Greyhound Park in West Memphis, Arkansas. Following the race a routine urine sample was taken and

sent to a laboratory for analysis. The Commission's chemist reported that the analysis revealed the presence of caffiene and/or analog or derivative thereof in violation of Rule 1233 of the Rules and Regulations Governing Greyhound Racing in Arkansas. Rule 1233 is as follows:

> The trainer shall be responsible for and be the absolute insurer of the condition of an entry he enters regardless of the acts of third parties.

> Should the chemical analysis of any sample indicate the presence of a drug, the trainer of the entry shall be suspended for sixty (60) days, or more, or shall be ruled off. In addition, any other person shown to have had the care or attendance of the entry shall be suspended for sixty (60) days, or more, or shall be ruled off. Further, the owner of such entry shall not participate in the purse distribution.

Prior to the race, Stylish Kim was placed in a lock-out kennel pursuant to Rule 3104 of the Rules and Regulations Governing Greyhound Racing in Arkansas, which provides:

> Immediately after being weighed in (prepost weight) the greyhounds shall be placed in lock-out kennels under the supervision of the Paddock Judge, and no owner or other person excepting the Paddock Judge, State Veterinarian, Kennel Master, Scale Clerk, Lead-outs under the supervision of the Paddock Judge, Presiding Judge or Commission's representatives shall be allowed in or near the lock-out kennels.

Although trainers and owners are not permitted in the lock-out kennels there are two closed-circuit television cameras positioned in such a manner so that the entire lock-out room can be observed by watching one of two sets of monitors. These monitors are located in the State Veterinarian's office and the area of the weigh in scales so trainers and owners may observe their dogs.

After a hearing, D'Avignon was suspended for sixty (60)

days and on appeal he contends that Rule 1233, the absolute insurer rule, is unconstitutional by its own provisions and in its application in conjunction with Rule 3104. We will first address the issue of the constitutionality of Rule 1233.

The refusal to impose individual liability for an act which one would not reasonably or ordinarily foresee as causing harm is a basic precept ingrained in our system of jurisprudence. However, the courts have long recognized that the imposition of liability without fault may be appropriate for the general welfare or protection of the public and such sanctions do not violate the due process clauses of the State and Federal Constitutions so long as they bear a reasonable relationship toward accomplishing the desired result. There are many instances in which the United States Supreme Court has approved the application of strict liability and this court is of the opinion that this rule of law is well enough established to allow this court to forego a discussion of the particular cases. See *Sandstrom* v. *California Horse Racing Bd.,* 31 Cal.2d 401, 189 P.2d 17, 20-21, *cert. denied,* 355 U.S. 814 (1948), see cases cited; *Maryland Racing Comm.* v. *McGee,* 212 Md. 69, 128 A.2d 419, 424 (1947), see cases cited. This court has recognized the power of the Arkansas Racing Commission to:

> Take such other action, not inconsistent with law, as it may deem necessary or desirable to supervise and regulate, and effectively control *in the public interest,* Greyhound Racing in the State of Arkansas.

*Arkansas Racing Comm.* v. *Hot Springs Kennel Club, Inc.,* 232 Ark. 504, 339 S.W.2d 126 (1960).

We feel the enterprises of horse and dog racing are especially susceptible to fraud and deceit because of the parimutuel wagering. It is apparent that detection of the adulteration of an entrant prior to payment to the winning betters is not feasible and it is imperative that society be afforded as much protection as possible to prevent abuses. For these reasons, we find the absolute insurer (Rule 1233) a constitutional and valid exercise of the police power of this state.

D'Avignon next contends that the absolute insurer rule (Rule 1233) is unconstitutional because of its application in conjunction with the lock-out rule (Rule 1304). He argues that the imposition of a rule of strict liability is predicated on the concept that the one on whom such a burden is placed has control of the instrumentality causing the harm and that this control places him in the best position to prevent harm or injury. The vicious dog is in the control of the owner — the locomotive that starts a fire on the railroad right-of-way is maintained by and in the control of the railroad — the one using a dangerous substance such as explosives for blasting can prevent injury by exercising a high degree of care — the merchant who processes food is in the best position to prevent its adulteration. Counsel for Appellant makes a persuasive argument that Appellant has been deprived of his control of Stylish Kim because of the lock-out rule. No cases from any jurisdictions have ruled on the constitutionality of the absolute insurer rule in conjunction with a lock-out rule.

Several reasons have been given for the lock-out rule. Testimony was offered at the hearing that this rule eliminates the need for a prerace weigh in. Under this rule all of the dogs that are entered in the twelve races to be held that evening are weighed in at approximately 6:00 p.m. After they are weighed the dogs are delivered to race officials for placement in cages in the lock-out room which is monitored by closed-circuit television cameras. The room contains as many as 96 dogs before the first race is run. Stylish Kim was placed in the cage designated as "4 — 4" representing the fourth dog in the fourth race. The cages for each race are together to make the dogs more readily available and for ease in handling the animals prior to each race. There are usually three attendants in the lock-out room at all times. Immediately prior to a race, the dogs entered are taken to a "prerace walk area" for waste elimination purposes and they are then paraded to a reviewing stand allowing spectators to see the animals. The lock-out room is air conditioned and provides a better environment than a cage in a truck in the parking lot. In summer the heat in the parking area would have an effect on the performance of a dog in a race.

A major benefit of the lock-out rule is the elimination for the need for the dogs to be weighed immediately prior to a race. The dogs must be within two pounds of a given weight when they are entered for the race and if they were taken back to their cage in the trucks in the parking area they would have to be weighed again prior to the race. Since the dogs are turned over to the track officials immediately after the entry weigh in, they do not have the opportunity to eat and the prerace weigh in is unnecessary.

In the oral argument of this case other benefits of the lock-out rule were given such as the prevention of a trainer or owner from using various measures to excite an animal to increase his performance. The condition and treatment of the dog is certainly a concern of the Commission.

Counsel for appellant has made an excellent presentation of his position that the lock-out rule causes an unconstitutional application of the absolute insurer rule but this court is of the opinion that appellant *has the opportunity* to observe his animals while they are in the lock-out room if he so desires. D'Avignon testified that he was too busy to stand at the closed-circuit television monitors and constantly watch his animals. He said that he had to pick up dogs after they had raced to return them to his truck while his other entrants remained in the lock-out room. This court recognizes that without the lock-out room D'Avignon would have to leave some of his animals in his truck to take other entrants to a prerace weigh in so in any event his dogs would be left unobserved unless he has an assistant.

Nowhere in the record of this case can be found any testimony or evidence that D'Avignon complained that the manner in which the lock-out room was constructed or equipped does not afford a proper opportunity to observe the animals and protect them from abuse or adulteration. Even more noticeable is the absence of any evidence in this record that the design of the lock-out room or equipment in fact does not afford the opportunity to guard the animals against abuse or tampering. Although physical control of Stylish Kim was relinquished by D'Avignon when the dog

was placed in the lock-out room, Appellant's argument of lack of control falls short under the evidence in this case. Since there are two television cameras located inside the lock-out room and two sets of monitors on which a trainer or owner can view the lock-out room and since there is no evidence in the record reflecting inadequacies in the design of the lock-out room which might deprive D'Avignon from properly observing his animal, this court is of the opinion that trainers and owners still maintain a sufficient degree of control for the observation and protection of their animals.

From the foregoing considerations it follows that the evidence in this case is not such as to warrant a finding by this court that the application of the lock-out rule in conjunction with the absolute insurer rule is unconstitutional.

Affirmed.

HAYS, J., not participating.