James D. JACKSON *v.*
ARKANSAS RACING COMMISSION

00-435                                                    34 S.W.3d 740

Supreme Court of Arkansas
Opinion delivered January 11, 2001

*Laser Law Firm, P.A.,* by: *Sam Laser* and *Brian A. Brown,* for appellant.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.,* by: *Byron Freeland,* for appellee Arkansas Racing Commission.

*Friday, Eldredge & Clark,* by: *James M. Simpson,* for appellee Oaklawn Jockey Club.

*Dodds, Kidd, Ryan & Moore,* by: *Donald S. Ryan,* for appellees Bush Williams and Jo Williams.

W.H. "DUB" ARNOLD, Chief Justice. The Court of Appeals certified this case for us to consider an issue of first impression, constitutional interpretation, and substantial public interest involving the construction of the Rules and Regulations of appellee Arkansas Racing Commission. Our jurisdiction is authorized pursuant to Ark. R. Sup. Ct. 1-2(d) and 1-2(b)(1), (3), (4), (5), and (6) (2000). Appellant, James D. Jackson, brings the instant appeal from a Pulaski County Circuit Court order affirming appellee's decision disqualifying appellant's horse, Valhol, from the Arkansas Derby run on April 10, 1999, at Oaklawn Park, in Hot Springs, Arkansas, and ordering the forfeiture, return, and redistribution of the purse, trophy, and first-place award.

Billy Patin, a jockey licensed by appellee, rode Valhol in the Derby at the request of appellant and Dallas Keene, the horse's trainer. Although Valhol won the race by four-and-a-half lengths,

Oaklawn Park officials discovered a "battery" on the track immediately following the race. A battery is a small electrical device that, if used, could alter the outcome of a race by increasing the horse's speed. Possession of such an electrical device is prohibited by appellee's Rules 1214 and 2128[1]. While reviewing a videotape of the race, Oaklawn Park officials observed that Valhol's jockey dropped a dark object on the track after crossing the finishing line.

Subsequently, track stewards investigated the incident and, following a hearing on May 5, 1999, suspended and fined the jockey, disqualified the winner, Valhol, and redistributed the purse money.[2] Jackson appealed the stewards' decision to the Arkansas Racing Commission. At a May 24, 1999 hearing, appellee upheld the stewards' ruling. In particular, the commission found that "Billy C. Patin was in possession of an electrical device during the running of the Arkansas Derby." Consequently, appellee also disqualified Valhol and ordered the purse money redistributed.

Next, Jackson appealed the commission's decision to the Pulaski County Circuit Court. The circuit court affirmed. In the instant appeal, Jackson challenges the circuit court's order and raises four points urging reversal. First, he claims that appellee's rules do not authorize it to redistribute purse money. Second, he argues that such punishment is unwarranted because he was unaware that his jockey possessed an unauthorized electrical device, and appellee made no finding that the device was used or that the outcome of the race was altered. Third, appellant contends that the punishment is unconstitutional and a violation of his due-process rights. For his final point on appeal, Jackson submits that appellee and Oaklawn bear some responsibility for failing to protect him, and other horse

---

[1] Rule 1214, contained in the Arkansas Racing Commission's Rules and Regulations' section entitled "Corrupt, Fraudulent and Prohibited Practaces," provides that no eletrical or mechanical device or other expedient designed to increase or decrease the speed of a horse, or that would tend to do so, other than the ordinary whip, shall be possessed by any one or applied by anyone to a horse at any time on the grounds of a franchise holder during a Meeting whether in a race or otherwise.

Located under the section entitled "Owners and Trainers," rule 2128 states that nno person licensed by the Commission shall have in his possession on or aobut any race track any appliance, electrical, mechanical, or otherwise which could affect the racing condition or speed of a horse.

[2] Rule 2068 authorises the stewards to impose fines or supensions, or both, for infractions fo the rules. Rule 2070 permits the stewards to suspend a person or disqualify a horse.

owners, from the unauthorized actions of their jockeys. We find no merit in appellant's arguments, and we affirm the circuit court's decision.

### I. Motion to strike Oaklawn's brief and oral argument

As a preliminary matter, we consider appellant's motion to strike Oaklawn's appellate brief. First, we acknowledge that Oaklawn has participated throughout the course of this litigation, without prior objection and with appellant's consent. In fact, appellant urged Oaklawn to award the Derby prize money to him. Oaklawn opposed appellant's position and presented the case against him, his trainer, and his jockey. Second, we note that appellant benefits from Oaklawn's brief, which contains a supplemental abstract consisting of a condensation of the material rules at issue in this appeal. In this respect, appellant's brief was insufficient by its failure to abstract all "matters in the record as are necessary to an understanding of all questions presented to the Court for decision." *See* Ark. R. Sup. Ct. 4-2 (2000).

■ Third, given appellant's final point on appeal, urging this court to recognize that Oaklawn had a duty to protect him from his jockey's actions, we are reluctant to deny Oaklawn the opportunity to respond to appellant's argument. Accordingly, we deny appellant's motion to strike Oaklawn's brief. Similarly, we deny appellant's untimely oral motion to strike Oaklawn's oral argument.

### II. Appellee's authority to redistribute purse

Jackson argues that appellee's rules and regulations do not authorize disqualification of a horse and redistribution of the purse for mere possession of a prohibited battery because no specific rule expressly creates authority for imposing those sanctions. However, appellant concedes that the rules permit such punishment when a horse tests positive for drugs. Given the rules' silence on the specific circumstances raised in his case, Jackson reasons that the commission's decision was erroneous.

The circuit court found appellant's arguments unpersuasive. In a December 14, 1999 letter opinion, the court concluded that the record contained "substantial, almost overwhelming evidence, that

jockey, Patin, possessed an electrical, and prohibited, battery powered device, which he discarded after the finish of the race." In the court's opinion, possession of the device, alone, was sufficient to sustain the sanction. The court determined that the sanctions against the jockey were justified in light of the commission's responsibility to protect the public interest in the sport of horse racing. The court explained that racing fans have:

> . . . a right to trust that the outcome of thoroughbred races will depend on the traditional considerations, including the natural abilities and characteristics of the horses, riders and trainers, and not on the effects of a battery powered device. Violation of that trust merits the sanction.

According to the court, "disqualification and redistribution are reasonable, even expected sanctions for violation of rules 1214 and/or 2128."

The court also noted that the commission is vested with sole jurisdiction over the business and sport of horse racing in Arkansas and may take what action it deems necessary to supervise, regulate, and control, in the public's interest, horse racing. *See* Ark. Code Ann. § 23-110-204(a)(6) (Repl. 1999). Moreover, pursuant to rule 2061, the stewards are empowered to interpret the commission's rules and "to decide all questions not specifically covered by the Rules." In sum, the court found that by entering Valhol in the Derby, Jackson knew or should have known that it was a violation for his jockey to possess an electrical device and that the stewards were authorized to suspend the jockey and disqualify the horse for such an infraction of the rules.

■ We agree with the circuit court's findings. As the court observed, the rules contain a number of violations that contain no sanction following the rule. Nevertheless, the stewards are empowered to punish violations of those rules, including disqualification of a horse. Given the paramount interest of protecting the public and the broad authority of the racing stewards and the commission to regulate the sport of horse racing, we decline to conclude that the rules did not permit the instant sanctions.

### III. Burden of proof

▇ Appellant also objects to the sanctions imposed upon him because they resulted from an infraction committed by another (i.e., his jockey). For his second point on appeal, Jackson claims that the commission's rules require proof that he either knew his jockey possessed the prohibited electrical device, that the device was used, or that the outcome of the race was altered. In response, appellee cites the applicable standard of review. An administrative agency's decision may be overturned if the petitioner's substantial rights have been prejudiced because the decision was: (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's authority; (3) made upon unlawful procedure; (4) affected by other error of law; (5) not supported by substantial evidence of record; or (6) arbitrary, capricious, or characterized by an abuse of discretion. *See* Ark. Code Ann. § 25-15-212(h) (1997). In light of the appellant's burden of proof and the deference afforded agency decisions, appellee maintains that the circuit court's decision should be affirmed.

▇ Indeed, we must give the evidence its "strongest probative force in favor of the agency's ruling." *Arkansas State Police Comm'n v. Smith,* 338 Ark. 354, 357, 944 S.W.2d 456, 458-59 (1999). We have acknowledged that administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts, to determine and analyze the unique legal issues affecting their agencies. *Id.* We have also held that between two fairly conflicting views, even if the reviewing court might have made a different choice, the board's choice must not be displaced. *Northwest Sav. & Loan Ass'n v. Fayetteville Sav. & Loan Ass'n,* 262 Ark. 840, 847, 562 S.W.2d 40, 52 (1978).

▇ Here, we cannot say that the commission's decision was unsupported by the evidence or arbitrary and capricious. In fact, as the circuit court pointed out, the racing rules do not require proof of collusion because of the balancing in favor of the public's interest. *See D'Avignon v. Ark. Racing Comm'n,* 279 Ark. 355, 651 S.W.2d 87 (1983). Giving appropriate deference to the agency's interpretation of its own rules, we reject appellant's argument that the commission failed to meet its burden of proof. We affirm the circuit court's finding that possession of the device, alone, was sufficient to sustain the sanctions.

### IV. Constitutionality of sanctions

Jackson maintains that the sanctions imposed upon him were unconstitutional because appellee violated his due-process rights. Along the same lines as his burden-of-proof argument, Jackson insists that the sanctions are unlawful in the absence of evidence of complicity between Jackson and his jockey. As a result, he claims that the stewards' and appellee's actions were arbitrary and capricious. We find no merit in appellant's argument.

■ Significantly, this court has recognized that liability may be imposed without fault and may be necessary for the protection of the public. *See D'Avignon v. Arkansas Racing Comm'n,* 279 Ark. 355, 358, 651 S.W.2d 87, 88 (1983). In *D'Avignon,* the appellant's dog-trainer's license was suspended for sixty days after a dog tested positive for drugs. The applicable rules made a trainer an absolute insurer of the condition of a dog's entry, regardless of acts by third parties. On appeal, D'Avignon argued that the absolute-insurer rule was unconstitutional. We disagreed.

■ Although the facts in *D'Avignon* involved an absolute-insurer rule, the reasoning underlying our decision applies equally well in the instant case. We commented that:

> the enterprises of horse and dog racing are especially susceptible to fraud and deceit because of the parimutuel wagering . . . . [I]t is imperative that society be afforded as much protection as possible to prevent abuses. For these reasons, we find the absolute insurer rule (Rule 1233) a constitutional and valid exercise of the police power of this state.

*D'Avignon,* 279 Ark. at 358, 651 S.W.2d at 88. Here, the commission's rule 1214 expressly and plainly prohibited possession of an electrical device. Appellant's jockey violated that rule. In light of the state's interest in affording the public "as much protection as possible to prevent abuses," we cannot say that Jackson's constitutional rights were violated in the instant case when sanctions were imposed upon him without proof of fault. *See id.*

■ Moreover, the commission was expressly authorized to "take such other action, not inconsistent with the law, as it may deem necessary or desirable to supervise and regulate, and to effectively control in the public interest, horse racing in the State of

Arkansas." (Emphasis added.) Ark. Code Ann. § 23-110-204(a)(6) (Repl. 1999); compare D'Avignon, 279 Ark. at 358, 651 S.W.2d at 88 (quoting Arkansas Racing Comm'n v. Hot Springs Kennel Club, Inc., 232 Ark. 504, 339 S.W.2d 126 (1960)). Possession of the device violated rule 1214, and no other rule required the commission to find that Jackson was aware his jockey possessed the device or that the device actually altered the race's outcome. Given the rule's violation, disqualification resulted. In conclusion, we agree with appellee that Jackson has not proven that the commission's actions were arbitrary or capricious or that his constitutional rights were violated.

### V. Duty to protect

Jackson's final point on appeal concerns obligations the commission and Oaklawn may owe to horse owners to protect them from the unauthorized actions of their jockeys. Appellant suggests that appellee and Oaklawn should have utilized Rule 2064 to "search the person, or enter and search the stables, rooms, vehicles, or other places within the track enclosure at which a meeting is held . . . of all persons licensed by the Commission, and of all employees and agents of any race track operator . . . ." Appellant argues that the failure to conduct a Rule 2064 search shifts liability to the commission and the track.

The Arkansas Racing Commission is the licensing authority for all jockeys in the State of Arkansas. However, as appellee points out, the commission has no duty, arising from any statute or other authority, to protect owners from the fraudulent or negligent acts of their own jockeys. Further, the commission illustrates that appellant was in the superior position to protect himself from his jockey's fraudulent act. Jackson entered into a contract with Patin to ride Valhol in the Arkansas Derby. Jackson had the opportunity to monitor his jockey, and Valhol's trainer had a similar opportunity. Apparently, Jackson and Valhol's trainer were satisfied with Patin because he was permitted to ride in the Derby.

Oaklawn agrees with the arguments advanced by the commission. Oaklawn's General Manager, Eric Jackson, also claims that protective measures were unnecessary because only two prohibited electrical devices have been discovered at the track in

twenty years. In any event, appellant has failed to cite any authority to lend support to his theory that either the commission or Oaklawn bears liability for a jockey's corrupt, fraudulent, or prohibited practices. We agree that Jackson was in the best position to observe his jockey and to make decisions about his suitability to ride Valhol in the Arkansas Derby. In the absence of any statute or rule imposing a duty on appellee or Oaklawn to protect appellant from his jockey's negligent or fraudulent actions, we reject Jackson's argument that such a duty was breached.

Affirmed.

GLAZE, IMBER, THORNTON, and HANNAH, JJ., not participating.

Special Justices PAUL GEAN, LEE FERGUS, and W.H. DILLAHUNTY concur.