840

NORTHWEST SAVINGS AND LOAN ASSOCIATION
and THE ARKANSAS SAVINGS AND
LOAN ASSOCIATION BOARD *v.*
FAYETTEVILLE SAVINGS AND LOAN
ASSOCIATION AND FIRST FEDERAL
SAVINGS AND LOAN ASSOCIATION OF
FAYETTEVILLE, ARKANSAS

77-219                                    562 S.W. 2d 40

Opinion delivered February 20, 1978
(Division I)
[Rehearing denied March 27, 1978.]

*Spitzberg, Mitchell & Hays,* by: *John P. Gill* and *Kent Foster; Kelley, Luffman & Jennings,* by: *Eugene Kelley* and *Roger W. Giles,* for appellants.

*Crouch, Blair, Cypert & Waters,* by: *James B. Blair* and *William M. Clark, Jr.; Friday, Eldredge & Clark,* by: *Hermann Ivester,* for appellees.

GEORGE HOWARD, JR., Justice. This controversy presents the following question for resolution: Whether the Washington County Circuit Court committed reversible error in holding that the Arkansas Savings and Loan Association Board's, hereinafter referred to as the Board, decision granting the application of Northwest Savings and Loan Association, hereinafter referred to as Northwest, to establish a branch office in Fayetteville, Arkansas, was not supported by substantial evidence.

## THE FACTS

On July 22, 1976, Northwest, which has its principal office in Rogers, Arkansas, filed an application with the Board for permission to establish a branch office in the City of Fayetteville, Washington County, Arkansas. Northwest's service area is the Benton and Washington Counties trade area, and Northwest has savings account customers as well as loan customers in Fayetteville. Northwest was chartered in 1973 under the laws of the State of Arkansas.

Appellees, First Federal Savings and Loan Association of Fayetteville, hereinafter referred to as First Federal, and

Fayetteville Savings and Loan Association,[1] hereinafter referred to as Fayetteville Association, protested the application of Northwest.[2]

On December 7, 1976, the Board rendered its decision finding, *inter alia:*

1. There is a public need for the proposed branch office and the volume of business in the area in which the proposed branch office will conduct its business is such as to indicate a successful operation; and,

2. The operation of the proposed branch office will not unduly harm any other existing association of Federal savings and loan association or other financial institution; and,

3. The operation of the proposed branch office will not unduly harm the association seeking authority to open the branch office.

In support of its findings of fact, the Board made thirty-two underlying facts which were separately and distinctly stated and numbered.

The Board concluded that the application of Northwest for permission to establish a branch office should be approved.

On December 8, 1976, Northwest opened the branch office for business.[3] However, on December 10, 1976, a temporary restraining order was issued by the Circuit Court of Washington County enjoining Northwest from doing any

[1]Although not an issue in this appeal, the Fayetteville Association filed, subsequently to the application of Northwest, an application with the Board for a branch office in Fayetteville which was protested by Northwest. Both applications were consolidated for hearing on the 7th of December, 1976, and the Board granted both applications.

[2]First Federal was chartered by the Federal Home Loan Bank Board under Federal Law.

[3]During the hearing on its application, Northwest informed the Board that Northwest had acquired a business site for its proposed branch office in Fayetteville, paying a purchase price of $145,000.00 for the site prior to the consideration of its application for the branch office by the Board.

business pending appeal of the Board's decision . The restraining order was subsequently made permanent pending completion of the appellate process.

On March 16, 1977, the Board denied appellees' petition for rehearing.[4]

On July 1, 1977, the Circuit Court rendered a rather detailed and extensive opinion which in substance found that the Board's decision was not supported by substantial evidence by considering the record as a whole, and further concluded that some of the findings of the Board were arbitrary and that the Board abused its discretion in granting the application of Northwest; and, accordingly, entered an order reversing the action of the Board.

## CONTENTION OF THE PARTIES

1. Appellants contend that the Board's decision in granting the application of Northwest is supported by substantial evidence and is not arbitrary or capricious. Moreover, appellants contend that the Circuit Court erred in substituting its judgment for that of the Board.

2. First Federal and Fayetteville Association both contend that the Circuit Court was correct in holding that the Board's approval of the application of Northwest was not supported by substantial evidence and that the Board's action was both arbitrary and capricious. Moreover, appellees contend that the Circuit Court's review did not involve the substitution of the court's judgment for that of the Board, but, on the contrary, the court's careful consideration of the record was to determine whether the Board's decision was based on relevant factors and whether there was clear error of

---

[4]Appellees filed an appeal in the Circuit Court of Washington County, Arkansas, from the Board's order of December 7, 1976, approving Northwest's application before petitioning the Board for a rehearing. Northwest and the Board challenged the jurisdiction of the Circuit Court to entertain the appeal on the grounds that appellees had not exhausted administrative remedies as required under Section 2(e) of the Rules and Regulations of the Board. Consequently, the Circuit Court remanded the cause to the Board. After the Board disposed of appellees' petition for rehearing, appellees refiled the petition for review of the Board's decision by the Circuit Court.

judgment on the part of the Board in granting Northwest's application.

Fayetteville Association also contends that it is inherently arbitrary, capricious and an abuse of discretion for the Board to approve an application for a branch office by outsiders in a city having local savings and loan associations.

## THE DECISION

After carefully reviewing the record and the briefs submitted by appellants and appellees, we are persuaded that the appellants are correct in asserting that there is substantial evidence to support the Board's decision and that in several instances, the trial court substituted its judgment for that of the Board. Consequently, the holding of the Circuit Court of Washington County, Arkansas, is reversed.

In *First State Building & Loan Association, Mountain Home, Arkansas* v. *Arkansas Savings & Loan Association Board and Home Savings & Loan Association,* 261 Ark. 482, 549 S.W. 2d 274 (1977), we stated that in reviewing the record to determine if the Board's findings are supported by substantial evidence:

"... we consider the evidence with all reasonable inferences deducible therefrom in the light most favorable [to the Board's action] ... Whether the evidence of Appellee or the Appellant weighs more heavily is not a consideration."

In *First National Bank of Fayetteville* v. *Smith,* 508 F. 2d 1371 (8th Cir. 1974), the Court, *inter alia,* observed:

"The 'arbitrary and capricious' standard of review is a narrow one ... its scope is more restrictive than the 'substantial evidence' test which is applied when reviewing formal findings made on a hearing record ... 'Administrative action may be regarded as arbitrary and capricious only where it is not supportable on any rational basis' ... *Something more than mere error is necessary to meet the test* ... To have administrative action set aside as arbitrary and capricious, the party challenging the action must prove that it was 'willful and unreasoning

action,' without consideration and a disregard of the facts or circumstances of the case . . ." (Emphasis added)

In *Terrell Gordon* v. *Gordon L. Cummings, et al,* 262 Ark. 737, 561 S.W. 2d 285 (1978), we made the following statement involving administrative proceedings:

"It is well settled that administrative agencies are better equipped than courts, by specialization, insight through experiences and more flexible procedures to determine and analyze underlying legal issues; and this may be especially true where such issues may be wrought up in a contest between opposing forces in a highly charged atmosphere. This recognition has been asserted, as perhaps, the principal basis for the limited scope of judicial review of administrative action and the refusal of the court to substitute its judgment and discretion for that of the administrative agency."

The following excerpts from the trial court's opinion characterize the posture assumed by the trial court in reviewing the record in order to determine if the findings and conclusions of the Board were supported by substantial evidence:

"If, in fact, this be true, and savings and loan associations in Washington County are losing their competitive position with the banks, does it follow that this trend would be changed by the addition of still another savings and loan branch office into an area in which existing savings and loan associations are being bested by the banks, loan-wise? There is no substantial evidence in the record to explain this, or to so indicate.[5]

"The COURT believes that there is substantial evidence in the record upon which the Board should have predicated a finding that Northwest Savings and Loan Association had not experienced the growth in savings it would have liked to realize from its operations in Rogers and Benton County, and that the move to ex-

[5]Here the Court discusses finding No. 17 of the Board which found that the savings and loan industry in Washington County is losing its competitive position with the banking industry as compared to Benton County.

pand and establish a branch office in Fayetteville was a move to capture a part of the attractive Washington County savings market."

As we stated in *Terrell Gordon* v. *Gordon L. Cummings, et al,* supra, the review of an administrative agency's decision is limited in scope and the court may not substitute its judgment and discretion for that of the agency. Moreover, the trial court should not become an advocate for one side or the other. It must be remembered that the credibility of witnesses and the proper weight to be accorded evidence presented to the Board is a prerogative of the Board and not that of the reviewing court. The Board has a superior position to that of the reviewing court inasmuch as it is in a position to observe the witnesses and consider their demeanor. The reviewing court may not displace the Board's choice between two fairly conflicting views even though the Court would have made a different choice had the matter been before it *de novo*. The reviewing court may set aside a Board's decision when it cannot conscientiously find that the evidence supporting that decision is substantial.

We do not find that the Board's action may be characterized as arbitrary or capricious because, in our judgment, none of the evidence contained in this record may be classified as based upon suspicion, surmise, implications or plainly incredible evidence. It is true that there is evidence in the record that does not support the establishment of a branch, but on the whole, the decision of the Board is sustained by substantial evidence.

Relative to need, there is evidence that clearly shows that the proposed service area is one of the fastest growing areas in this part of the State. Moreover, the population is growing at a rate of approximately three times that of the State of Arkansas; it was established that the loan demand for home financing would be over $32.0 million in Washington County for the year 1976; it was established that the population in Washington County will grow over 12,000 people between 1976 and 1981; the Northwest Regional Planning Commission projected a need of 4,256 new dwelling units for the period 1976 to 1981.

The existing savings and loan associations in the proposed area grew about $83.0 million between 1971 and 1976. The evidence also shows that the savings and loan industry, as it existed at the time of the hearing before the Board, could not adequately serve the projected loan demands of the area; the record reflects that the savings and loan associations' share of the total mortgage market dropped from 30.6% in 1973 to 22.1 in 1976, while the commercial banks' share grew, during the same period, from 31.8% to 53.0%; that during the period 1973-1976 (projected for all of 1976), the total mortgage recordings increased from $72,000,000 to over $110,000,000. Moreover, this record indicates that the deposit growth in the proposed area shows again that the banks have acquired a larger total amount of savings deposits and a larger percentage share than the savings and loan industry in recent years.

The growth that is taking place now in the proposed service area convinces us that appellants' branch facility can operate successfully and can do so without causing harm or detriment to existing financial institutions.

We are further persuaded that Northwest can provide additional services that existing savings and loan associations do not provide, and these include, among other things, the following:

A. Premiums and gifts to savers for making saving deposits.

B. Loan assumption and transfer fee of only $50 instead of 1% of the unpaid balance of the loan.

C. No charge for loan application, credit reports and additional appraisal fees unless the loan is actually made.

D. Drive-in teller windows.

E. Parking.

F. Compounding interest daily, which amounts to paying 1/4 of a percent more per year than compounding interest weekly.

Finally, appellees have not cited any authorities to support their contention that it is inherently arbitrary, capricious and an abuse of discretion for the Board to approve the location of a branch of a savings and loan association owned by outsiders in a city having local savings and loan associations. While the presence of an existing savings and loan association in the proposed service area may be a factor that is taken into consideration in granting or denying a branch application, we are persuaded that it should not be the controlling and dominant factor in ruling on an application such as the one that is considered in this case. We believe that the existence of this branch may serve to stimulate competition in the proposed service area and as argued in the Board's brief, the most obvious example of the lack of competition in the proposed area is illustrated by the release, almost simultaneously, of identical notices by the appellees indicating that a revised loan assumption policy would raise the transfer fee to 1% of the unpaid balance of the loan.

Reversed and remanded for proceedings not inconsistent with this opinion.

We agree. HARRIS, C.J., and GEORGE ROSE SMITH and HICKMAN, JJ.