## ARKANSAS STATE RACING COMMISSION
### *v.* WAYNE WARD, INC.

01-229                                          57 S.W.3d 198

Supreme Court of Arkansas
Opinion delivered October 25, 2001
[Petition for rehearing denied December 6, 2001.]

*Mitchell, Williams, Selig, Gates & Woodyard, PLLC*, by: *Byron Freeland*, for appellant.

*Rieves, Rubens & Mayton*, by: *Kent J. Rubens*, for appellee.

RAY THORNTON, Justice. The Arkansas State Racing Commission ("the Commission"), appeals the January 11, 2001, decision of the Crittenden County Circuit Court reversing the Commission's order that affirmed the order of the Southland Greyhound Park Board of Judges ("the Board") redistributing the winner's purse from the eleventh race at Southland Greyhound Park ("Southland") on May 31, 1997, because of a violation of the rules prohibiting drugs. The Commission contends that the circuit court's decision should be reversed because the Commission's decision was not arbitrary, capricious, or otherwise characterized by an abuse of discretion and is supported by substantial evidence.[1] We agree and reverse.

The facts of this case are not in dispute. Ward is the owner of a greyhound dog, Royal Duke, that finished first in the eleventh race at Southland on Saturday, May 31, 1997. Royal Duke's urine sample, which was taken following the race, was found to contain Dimethyl Sulfoxide ("DMSO"), an anti-inflammatory drug.[2] The trainer admitted to applying DMSO to Royal Duke on the Wednesday prior to the race.

Rules 1226, 1230, and 1233 of the Rules and Regulations Governing Greyhound Racing in Arkansas ("the Rules") prohibit the administration of any drug prior to a race and provide for a fine

---

[1] In response, Ward argues that the Commission's decision to redistribute the purse violated the Eighth Amendment to both the Constitution of the United States and the Arkansas Constitution, and that it deprived him of due process. However, neither the Commission nor the circuit court issued a ruling on these arguments. It is well settled that to preserve arguments for appeal, even constitutional ones, the appellant must obtain a ruling below. *E.g., Barclay v. First Paris Holding Co.*, 344 Ark. 711, 42 S.W.3d 496 (2001) (citing *Wilson v. Neal*, 332 Ark. 148, 964 S.W.2d 199 (1998)). Accordingly, we reject this argument without reaching the merits. Nevertheless, while the constitutional argument has not been preserved for appeal in the present case, we note that we have recently addressed the question whether the redistribution of a horse racing purse because of the possession of a prohibited electrical device in violation of racing rules deprived the owner of his constitutional rights and determined that we could not conclude that the owner's constitutional rights were violated. *See Jackson v. Arkansas Racing Comm'n*, 343 Ark. 307, 34 S.W.3d 740 (2001).

[2] DMSO is a Class 5 drug under the Uniform Classification Guidelines for Foreign Substances and Recommended Penalties and Model Rules, adopted by the Association of Racing Commissioners International ("the RCI Guidelines and Model Rules"), which were revised in October of 1996.

to be assessed against the trainer and a forfeiture of any purse claimed by the owner of a dog testing positive for any prohibited drug. Pursuant to these Rules, the Board, in Ruling #16 of 1997, fined the trainer $25.00 and ordered the purse of $11,000.00 to be redistributed to the owner of the second place dog.

Ward appealed the action of the Board to the Commission, arguing that the redistribution of the purse violated the Eighth Amendment to the Constitution of the United States, as well as its counterpart in the Arkansas Constitution, and that it deprived him of due process. Ward also contended that the Rules are arbitrary and irrational in their operation because the penalty only applies when the offending dog wins the race; the penalty to the owner is disproportionate to the trainer's fine; the wagering public is not protected because the public collects wagers as though the offending dog had won; DMSO is neither a performance enhancing nor performance retarding drug; and DMSO does not get reported all the time, even though the Rules prohibit the presence of any amount of DMSO.

On November 20, 1997, the Commission conducted a hearing. On January 31, 1998, the Commission entered its findings of fact and conclusions of law and its order denying Ward's appeal and ordering the purse to be redistributed in accordance with the Commission's Rules.

Ward filed a petition to review the order of the Commission with the Crittenden County Circuit Court, pursuant to Ark. Code Ann. § 25-15-212(h) (Repl. 1996). The circuit court held a hearing and, on December 29, 2000, entered its order finding that the Commission Order of January 31, 1998, was not supported by substantial evidence, and was an abuse of discretion and was arbitrary and capricious. It is from this order that the Commission brings this appeal. We note that this case has been certified to us. We accepted jurisdiction pursuant to Ark. Sup. Ct. R. 1-2(a)(1) & (b)(3) because of the constitutional questions argued by Ward.

*Standard of Review*

We have outlined our standard of review of the decisions of administrative agencies on numerous occasions. In *Arkansas State Police Comm'n v. Smith*, 338 Ark. 354, 994 S.W.2d 456 (1999), we stated:

The standard of review in this area of the law is well-developed. The appellate court's review is directed not toward the circuit court, but toward the decision of the agency. That is so because administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts, to determine and analyze legal issues affecting their agencies. *McQuay v. Arkansas State Bd. of Architects*, 337 Ark. 339, 989 S.W.2d 499 (1999); *Social Work Licensing Bd. v. Moncebaiz*, 332 Ark. 67, 962 S.W.2d 797 (1998); *Files v. Arkansas State Highway and Transp. Dep't*, 325 Ark. 291, 925 S.W.2d 404 (1996). Our review of administrative decisions is limited in scope. Such decisions will be upheld if they are supported by substantial evidence and are not arbitrary, capricious, or characterized by an abuse of discretion. *McQuay, supra*; *In re Sugarloaf Mining Co.*, 310 Ark. 772, 840 S.W.2d 172 (1992).

These standards are consistent with the provisions of the Administrative Procedure Act, Ark. Code Ann. § 25-15-201—25-15-214 (Repl. 1996), which requires that the scope of appellate review under the Act be limited. According to the Act, it is not the role of the circuit courts or the appellate courts to conduct a *de novo* review of the record; rather, review is limited to ascertaining whether there is substantial evidence to support the agency's decision or whether the agency's decision runs afoul of one of the other criteria set out in section 25-15-212(h). *Arkansas Bd. of Exam'rs v. Carlson*, 334 Ark. 614, 976 S.W.2d 934 (1998). We review the entire record in making this determination. *Id.* We also note that in reviewing the record, the evidence is given its strongest probative force in favor of the agency's ruling. *Arkansas Health Servs. Agency v. Desiderata*, 331 Ark. 144, 958 S.W.2d 7 (1998).

*Smith, supra; see also Jackson, supra*. We have also held that between two fairly conflicting views, even if the reviewing court might have made a different choice, the board's choice must not be displaced. *Jackson, supra* (citing *Northwest Sav. & Loan Ass'n v. Fayetteville Sav. & Loan Ass'n*, 262 Ark. 840, 562 S.W.2d 49 (1978)).

The relevant section of the Arkansas Administrative Procedure Act provides:

(h) The court may affirm the decision of the agency or remand the case for further proceedings. It may reverse or modify the decision if the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the agency's statutory authority;

(3) Made upon unlawful procedure;

(4) Affected by other error or law;

(5) Not supported by substantial evidence of record; or

(6) Arbitrary, capricious, or characterized by abuse of discretion.

Ark. Code Ann. § 25-15-212(h).

For its sole point on appeal, the Commission argues that the circuit court erred in finding that the Commission's decision was arbitrary, capricious, or otherwise characterized by an abuse of discretion and was not supported by substantial evidence. The Commission argues that its decision was not arbitrary, capricious, or otherwise characterized by an abuse of discretion and was supported by substantial evidence because it merely applied the Rules to the undisputed facts in making its conclusion to redistribute the purse.

In response to the Commission's arguments, Ward contends that the circuit court correctly found that the Commission's order redistributing the purse was arbitrary and capricious and not supported by substantial evidence because the Commission did not conduct a *de novo* review of the case, but merely "rubber stamped" the Board's ruling. Ward further argues that the Commissioners lacked the expertise regarding racing to make the decision. Ward also contends that the Rules themselves operate in an arbitrary and capricious manner. Specifically, Ward argues that it is arbitrary and capricious that the presence of a substance that neither enhances nor retards performance results in the loss of a purse, and it is arbitrary and capricious that only winning owners are to be punished. Finally, Ward seeks to contest the Commission's order redistributing the purse as a violation of both the United States and Arkansas Constitutions.

The pertinent Rules are Rules 1226, 1230, and 1233, which are published in the 1980 edition of the Rules. These Rules are contained in the section entitled "Corrupt, Fraudulent and Prohibited Practices." Rule 1226 provides:

> Except for lawful administration of medication, *no person shall administer, or permit to be administered, any drug in any manner whatsoever, internally or externally, to any greyhound entered or to be entered in a race, prior to the race.*

Rules and Regulations Governing Greyhound Racing in Arkansas, Rule 1226 (1980) (emphasis added).

Rule 1230 provides:

Any trainer, attendant, owner, or other person who shall be adjudged guilty of any participation in or knowledge of the administration of any drug to any entry in a race or otherwise unlawfully tampering with greyhounds for the purpose of increasing or retarding the speed of such greyhound shall for the first and second offenses be punished to such extent as the Board of Judges rule, and for the third offense may be thereafter ruled off and denied a license for life. *It is provided, however, that the owner of a greyhound to which a drug has been unlawfully administered, or which has been unlawfully tampered with, or any entry of which such greyhound is a part, shall be denied any part of the purse and the purse shall be distributed as in the case of a disqualification.* If said purse is paid before disqualification, then the proper owner entitled to said purse may recover from those who had received such purse. In the event that a greyhound establishes a track record in a race and it later develops that the chemical analysis of any sample taken from such greyhound indicates the presence of a narcotic, stimulant, depressant or local anesthetic, then such track record shall be null and void.

Rules and Regulations Governing Greyhound Racing in Arkansas, Rule 1230 (1980) (emphasis added).

Rule 1233 provides:

The Trainer shall be responsible for and be the absolute insurer of the condition of an entry he enters regardless of the acts of third parties. Should the chemical or other analysis of saliva, urine or blood specimens prove positive, showing the presence of any narcotic, stimulant, depressant, chemical *or drug of any kind or description*, the trainer may, in the discretion of the Board of Judges, subject to appeal to the Commission, be fined, suspended or ruled off the track. *In addition, any other person shown to have had the care or attendance of the entry shall not participate in the purse distribution.*

Rules and Regulations Governing Greyhound Racing in Arkansas, Rule 1233 (1980) (emphasis added).

*Substantial Evidence*

The Commission argues that the circuit court erred in concluding that its decision to redistribute the purse was not supported by substantial evidence. The Commission argues that its decision was supported by substantial evidence because it was merely applying the Rules to the undisputed facts. We agree.

[4] Substantial evidence has been defined as valid, legal, and persuasive evidence that a reasonable mind might accept as adequate to support a conclusion, and force the mind to pass beyond conjecture. *Smith, supra* (citing *McQuay, supra; Bohannon v. Arkansas Bd. of Nursing,* 320 Ark. 169, 895 S.W.2d 923 (1995)). The challenging party has the burden of proving an absence of substantial evidence. *Smith, supra.* To determine whether a decision is supported by substantial evidence, the record is reviewed to ascertain if the decision is supported by relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Arkansas State Highway & Transp. Dep't v. Kidder,* 326 Ark. 595, 933 S.W.2d 794 (1996). When reviewing the evidence, the court gives it its strongest probative force in favor of the agency. *Id.* The issue is not whether the evidence supports a contrary finding, but whether it supports the finding that was made. *Id.* It is the prerogative of the agency to believe or disbelieve any witness and to decide what weight to accord the evidence. *Smith, supra* (citing *McQuay, supra*). We must affirm the agency's decision if there is substantial evidence to support it. *Smith, supra* (citing *Partlow v. Arkansas State Police Comm'n,* 271 Ark. 351, 609 S.W.2d 23 (1980).

In the present case, there was substantial evidence to support the decision of the Commission to redistribute the purse. It was undisputed that the trainer had applied DMSO to Royal Duke on the Wednesday prior to the Saturday race. It was also undisputed that a urine sample taken from Royal Duke after the Saturday race tested positive for DMSO through a qualitative test. Under Rule 1226, DMSO is a prohibited drug because, according to that rule, "no person shall administer, or permit to be administered, *any drug in any manner whatsoever,* internally or externally, to any greyhound entered or to be entered in a race, prior to the race." Rules and Regulations Governing Greyhound Racing in Arkansas, Rule 1226 (1980) (emphasis added). Moreover, under the RCI Guidelines and Model Rules, the applicability of which was not disputed by either party and which was admitted into evidence, DMSO is a Class 5 drug, for which the recommended penalty is zero to fifteen days

suspension, with a possible loss of purse and/or fine. Finally, there was no contention that DMSO was not an illegal drug. Consequently, under Rules 1230 and 1233, loss of the purse is the penalty to the owner for administration of any drug prior to the race. The Commission's findings of facts and conclusions of law reflected the application of these undisputed facts to the Rules.[3]

---

[3] The Commission's Findings of Fact and Conclusions of Law provide:

### FINDINGS OF FACT OF THE ARKANSAS RACING COMMISSION

Based on the testimony and evidence presented, the Commission makes the following findings of fact:

1. Royal Duke, owned by Wayne Ward, Inc., won the 11th race at Southland Greyhound Park on May 31, 1997. The winner's share of the purse was $11,000.
2. Subsequent to the race, the Commission took a urine sample from Royal Duke, which tested positive for DMSO. DMSO is a compound used as a topical anti-inflammatory which easily penetrates the skin to help reduce swelling.
3. Mr. Ward admitted that his trainer used DMSO in spray bottles, and did not contest the fact that DMSO was found in the urine sample of Royal Duke.
4. Mr. Ward argued that the penalty imposed, the forfeiture of the entire purse of $11,000, was too severe since, according to Mr. Ward, DMSO does not affect the performance of a dog.
5. Under the Uniform Classification Guidelines for Foreign Substances and Recommended Penalties and Model Rule, adopted by the Association of Racing Commissioners International, Inc., DMSO is a Class 5 drug.
6. A violation for the presence of a Class 5 drug has a recommended penalty of 0 - 15 days suspension with a possible loss of purse and/or fine under the Model Rules.

### CONCLUSIONS OF LAW OF THE ARKANSAS RACING COMMISSION

Based on the testimony and evidence presented, the Commission makes the following conclusions of law:

1. DMSO is a prohibited drug under the Commission's rules.
2. Under the Commission's rules, if a dog tests positive for any prohibited drug, the owner forfeits the purse.
3. The Commission does not believe that forfeiture of the purse is too severe of a penalty in this case, and notes that it is within the range of penalties recommended by the Model Rules

In reversing the Commission's decision to redistribute the purse, the circuit court relied on several factors, including the trainer's stipulated testimony that he administered DMSO four days before the race, testimony that DMSO can be found in the urine twenty-four to forty-eight hours after administration, testimony that DMSO is not reported as a positive unless it is over thirty-six micrograms per milliliter, and testimony that indicated that DMSO does not necessarily improve the performance of the dog. However, the Commission's Rules strictly prohibit the administration of *any* drugs prior to a race. In addition, the Commission's Rules do not specify a time limit for the safe administration of such drugs before a race. Finally, the Commission's Rules provide a penalty to the owner under Rule 1230 and Rule 1233, regardless of whether the use of a drug increases or retards the performance of the dog.

■ We have recently held that between two fairly conflicting views, even if the reviewing court might have made a different choice, the board's choice must not be displaced. *Jackson, supra.* It was not within the purview of the circuit court to substitute its judgment for that of the Commission. Moreover, we have held that the Commission is expressly authorized to "take such other action, not inconsistent with law, as it may deem necessary or desirable to supervise and regulate, and to effectively control *in the public interest*, horse racing in the State of Arkansas." *Jackson, supra* (quoting Ark. Code Ann. § 23-110-204(a)(6) (Repl. 1999) (emphasis added)).

■ Because the Commission applied the undisputed facts to its Rules, we hold that the Commission's decision to redistribute the purse is supported by relevant evidence that a reasonable mind might accept as adequate to support its conclusion. Accordingly, we reverse the decision of the circuit court on this point.

*Arbitrary and Capricious*

The Commission also argues that the circuit court erred in concluding that its decision to redistribute the purse was arbitrary and capricious. We agree.

---

adopted by the Association of Racing Commissioners International, Inc.

■ We outlined our rule regarding the determination of whether an administrative action is arbitrary and capricious in *Smith, supra.* We stated:

> Administrative action may be regarded as arbitrary and capricious where it is not supportable on any rational basis. *Partlow, supra.* To have an administrative action set aside as arbitrary and capricious, the party challenging the action must prove that it was willful and unreasoning action, without consideration and with a disregard of the facts or circumstances of the case. *Partlow, supra.* We have stated that the requirement that administrative action not be arbitrary and capricious is less demanding than the requirement that it be supported by substantial evidence. *Beverly Enter.-Ark., Inc. v. Arkansas Health Servs.*, 308 Ark. 221, 824 S.W.2d 363 (1992). An action is not arbitrary and capricious simply because the reviewing court would act differently. *McQuay, supra.* Finally, we have held that once substantial evidence is found, it automatically follows that a decision cannot be classified as unreasonable or arbitrary. *Wright v. Arkansas State Plant Bd.*, 311 Ark. 125, 842 S.W.2d 42 (1992).

*Smith, supra.*

■ In the present case, we have concluded that there was substantial evidence to support the Commission's decision to redistribute the purse. Therefore, under our case law, which states that a decision cannot be classified as unreasonable or arbitrary once substantial evidence is found, the Commission's decision could not have been arbitrary and capricious. *See Smith, supra* (citing *Wright, supra*). Moreover, the Commission's decision was not arbitrary and capricious because there was no proof that the Commission's action in redistributing the purse was willful and unreasoning action, without consideration and with a disregard of the facts or circumstances of the case. Rather, the Commission set forth both the findings of fact and conclusions of law supporting its decision to redistribute due to the positive drug test.

■ Ward argues that the Commission's order was arbitrary and capricious because it did not conduct a *de novo* review of the Board's decision. As support for this argument, Ward relies on the statements of two of the commissioners, Mr. Roussel and Mr. Lorence, who each indicated a hesitation to overrule the Board's decision during the Commission hearing. However, while the statement by the two commissioners reflected some misunderstanding as to the standard of review the Commission was to apply during the hearing, that misunderstanding was resolved when the

Commission's counsel informed the Commission that it was required to apply a *de novo* standard of review:

> Let me explain, the Commission is to try this case *de novo*. What you need to do is base your decision on what you heard today, and just because the judges rules one way, that shouldn't be a factor in your decision.

In reaching its conclusion, the Commission considered the undisputed facts in conjunction with its rules, and, in doing so, was aware of its duty to apply a *de novo* standard of review to the Board's decision to redistribute the purse. Therefore, we cannot say that the Commission failed to apply a *de novo* standard of review. Accordingly, we reverse the decision of the circuit court on this point as well.

Reversed and remanded to reinstate Commission's order.