ARKANSAS CONTRACTORS LICENSING BOARD *v.*
PEGASUS RENOVATION COMPANY

01-708                                          64 S.W.3d 241

Supreme Court of Arkansas
Opinion delivered December 20, 2001

*Gregory L. Crow*, for appellant.

*Hartsfield, Almand & Grisham, P.L.L.C.*, by: *Larry J. Hartsfield*, for appellee.

JIM HANNAH, Justice. Appellant Arkansas Contractors Licensing Board (the Board) appeals the Saline County Circuit Court's decision to reverse the Board's decision to revoke Appellee Pegasus Renovation Company's (Pegasus) contractors license for a violation of Ark. Code Ann. § 17-25-308 (Repl. 1995), allowing revocation of a contractor's license for, among other things, "misconduct in the conduct of the contractor's business." Both parties agree that the facts are undisputed in this case.

During the mid-to-late Spring of 2000, Pegasus, a painting and drywall subcontractor, backed out of two projects, the Petit Jean Electric Cooperative project and the Farm Bureau Child Care Facility project, on which it was the lowest bidder, and breached a third contract already signed with general contractor Flynco, Inc. for the Carlton Bates Office/Warehouse expansion project. The three general contractors who relied on Pegasus's bids filed complaints with the Board. Flynco, Inc., the general contractor with whom Pegasus signed the contract, also filed suit against Pegasus for breach of contract.

After Flynco, Inc.'s complaint was filed, the Board issued an initial Notice of Hearing on June 21, 2000, regarding the Petit Jean Electric Cooperative project. An Amended Notice of Hearing and Notice of Continuance of Hearing was mailed to Pegasus on July 14, 2000, with the additional notice of the other two complaints on the Farm Bureau and Carlton Bates projects. The notices indicated that Pegasus was being cited for violating Ark. Code Ann. § 17-25-308 for "misconduct in the conduct of the contractor's business."

The hearing was held before the Board on August 11, 2000. The Board presented its evidence first, questioning Victor Smith of V.R. Smith and Sons, Inc., the general contractor hired to perform the Petit Jean Electric Cooperative project. Smith testified that his

company took bids from various subcontractors for painting and sheet rock work, with Pegasus entering the lowest bid. Smith used that bid in making his company's contract for the project, and prior to signing the final contract with Petit Jean Electric Cooperative, Smith confirmed Pegasus's bid with Pegasus's estimator. However, when Smith sent Pegasus the final contract to sign, Pegasus declined the job by letter and indicated that it would not take any calls from Smith regarding the matter. Smith hired the next lowest bidder, who entered a bid approximately $12,000 higher than Pegasus's bid. Pegasus's attorney did not cross-examine Smith.

The Board's second witness was Bill Mullinax, an investigator with the Board. Mullinax testified that after sending Smith's complaint to Pegasus, the Board received a response letter from Pegasus indicating that Pegasus had never signed a contract with Smith, and that the next lowest bidder's $12,000 bid was "a false statement." Mullinax also indicated that the second complaint came from Alessi Keyes Construction, the general contractor on the Farm Bureau project. Again, the evidence indicated that Pegasus submitted a bid and failed to follow through on signing the contract with the general contractor who relied on that bid for its final bid to Farm Bureau. Finally, Mullinax testified that a third complaint was filed by Flynco, Inc., regarding Pegasus's breach of contract on the Carlton Bates project.

Finally, the Board's attorney called J.W. Henderson, Pegasus's owner. Questioning verified that Henderson had sent the letters to the general contractors and that Henderson reneged on his low bid offers and on the contract with Flynco, Inc. Pegasus's attorney, Larry Hartsfield, did not cross-examine Henderson to develop any further information about Pegasus's failure to honor its bids and contract, nor did he call any other witnesses. However, at the close of evidence, Hartsfield argued to the Board that Ark. Code Ann. § 17-25-308 is unconstitutionally vague because the word "misconduct" does not have a legally recognized meaning, thus leaving the statute without a basis on which to judge the term. Hartsfield also argued that regarding the V.R. Smith and Alessi Keyes jobs, there was no legal basis to find misconduct if a bidder withdraws a bid prior to signing the final contract. Furthermore, Hartsfield argued that the term "gross" in the statute modifies, among other words, the word "misconduct" to raise the standard of proof.

After deliberations regarding whether failure to honor a bid rose to the level of misconduct and whether, *en masse*, these actions by Pegasus reached the level of misconduct, the Board voted three-

to-one to revoke Pegasus's contracting license for violation of the statute. In a decision entered on August 11, 2000, the Board found that Pegasus "failed and refused, without good cause, to perform the work on said projects." The Board found Pegasus guilty of misconduct in the conduct of its business, thus violating Ark. Code Ann. § 17-25-308. The Board did not rule on Pegasus's argument that the statute was void for vagueness for use of the term "misconduct."

Following this decision, Pegasus filed a Petition for Judicial Review in the Saline County Circuit Court pursuant to the Arkansas Administrative Procedure Act. The Board answered on September 13, 2000, and on October 31, 2000, the circuit court stayed the Board's revocation of Pegasus's license until the court made its final decision on the case. Pegasus filed its brief to the court on November 27, 2000, again arguing that Ark. Code Ann. § 17-25-308 is void for vagueness because of its use of the term "misconduct." Pegasus also argued that the statute is an unlawful delegation of legislative power, that the action of the Board was arbitrary and capricious given the facts before it, and that the penalty imposed was too harsh under the circumstances. The Board responded by brief on December 21, 2000, arguing that the statute is not unconstitutional wherein the Board is given the power of the State to act, and that the burden to prove whether the statute is unconstitutional is on Pegasus. The Board argues that the phrase "misconduct in the conduct of the contractor's business" is not vague, and cites various other administrative statutes providing for a similar phrase for administrative action. The Board also argued that its action was not arbitrary and capricious, and that the penalty imposed was valid. Pegasus replied on January 17, 2001.

The circuit court issued its decision on March 13, 2001, finding that the Board erred in revoking Pegasus's license. Specifically, the court found that Ark. Code Ann. § 17-25-305 lists qualifications of an applicant for an "original" or "renewal" license, and that the Board did not consider these eight factors in its decision. Furthermore, the court found that the Board did not address issues raised in the general contractors's complaints regarding Pegasus's "ability and willingness . . . to conserve the public health and safety of the citizens" of Arkansas, and that the grounds for revocation of these licenses with respect to misconduct means "misconduct inimicable to public health and safety issues." As such, the court found "[t]hat to the extent the Arkansas Contractors Licensing Board revoked the contractors license of Pegasus Renovation Company on grounds not relevant to public health and safety issues was

arbitrary and capricious." The court also specifically noted that it declined to rule on the constitutionality of the statute. The court then remanded the case to the Board for a determination consistent with the opinion. The Board appealed to this court instead on April 4, 2001.

■■ We have outlined our standard of review of the decisions of administrative agencies on numerous occasions. In *Arkansas State Police Comm'n v. Smith*, 338 Ark. 354, 357, 994 S.W.2d 456 (1999), we stated:

> The standard of review in this area of the law is well-developed. The appellate court's review is directed not toward the circuit court, but toward the decision of the agency. That is so because administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts, to determine and analyze legal issues affecting their agencies. *McQuay v. Arkansas State Bd. of Architects*, 337 Ark. 339, 989 S.W.2d 499 (1999); *Social Work Licensing Bd. v. Moncebaiz*, 332 Ark. 67, 962 S.W.2d 797 (1998); *Files v. Arkansas State Highway and Transp. Dep't*, 325 Ark. 291, 925 S.W.2d 404 (1996). Our review of administrative decisions is limited in scope. Such decisions will be upheld if they are supported by substantial evidence and are not arbitrary, capricious, or characterized by an abuse of discretion. *McQuay, supra; In re Sugarloaf Mining Co.*, 310 Ark. 772, 840 S.W.2d 172 (1992).

These standards are consistent with the provisions of the Administrative Procedure Act, Ark. Code Ann. § 25-15-201—25-15-214 (Repl. 1996), which requires that the scope of appellate review under the Act be limited. According to the Act, it is not the role of the circuit courts or the appellate courts to conduct a *de novo* review of the record; rather, review is limited to ascertaining whether there is substantial evidence to support the agency's decision or whether the agency's decision runs afoul of one of the other criteria set out in section 25-15-212(h). *Arkansas State Racing Comm. v. Ward, Inc.*, 346 Ark. 371, 57 S.W.3d 198 (2001); *Arkansas Bd. of Exam'rs v. Carlson*, 334 Ark. 614, 976 S.W.2d 941 (1998). We review the entire record in making this determination. *Id.* We also note that in reviewing the record, the evidence is given its strongest probative force in favor of the agency's ruling. *Arkansas Health Servs. Agency v. Desiderata*, 331 Ark. 144, 958 S.W.2d 7 (1998). We have also held that between two fairly conflicting views, even if the reviewing court might have made a different choice, the board's choice must not be displaced. *Jackson v. Arkansas Racing Commission*, 343 Ark.

307, 34 S.W.3d 740 (2001) (citing *Northwest Sav. & Loan Ass'n v. Fayetteville Sav. & Loan Ass'n*, 262 Ark. 840, 847, 562 S.W.2d 40, 52 (1978)).

■ The relevant section of the Arkansas Administrative Procedure Act provides:

> (h) The court may affirm the decision of the agency or remand the case for further proceedings. It may reverse or modify the decision if the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the agency's statutory authority;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error or law;
>
> (5) Not supported by substantial evidence of record; or
>
> (6) Arbitrary, capricious, or characterized by abuse of discretion.

Ark. Code Ann. § 25-15-212(h) (Repl. 1996). Administrative action may be viewed as arbitrary and capricious only when it is not supported by any rational basis. *Partlow v. Arkansas State Police Comm'n*, 271 Ark. 351, 609 S.W.2d 23 (1980).

On appeal, the Board argues that the circuit court erred in reversing the Board's decision to revoke Pegasus's contractors license. The Board argues that the circuit court erred in finding that it had acted in an arbitrary and capricious manner based on the court's reading that "misconduct" had to affect the "physical" "public health and safety" pursuant to Ark. Code Ann. § 17-25-305(a). Furthermore, the Board argues that even if the circuit court was correct in its interpretation of that statute, there was substantial evidence to support the Board's decision, and any determination by the circuit court that Pegasus's actions were not a threat to public health and safety was in error. Finally, the Board notes that it was in the best position to judge whether Pegasus's actions were "misconduct."

Pegasus responds that the circuit court did not err in finding that the Board had acted in an arbitrary and capricious manner, and that the word "misconduct" cannot withstand constitutional review because it is vague, thus rendering that statutory provision void. Pegasus for the first time on appeal also argues that the Board's acts were *ultra vires*, and that this court should adopt an additional standard on review, incorporating this standard. Furthermore, Pegasus argues that the circuit court's interpretation of Ark. Code Ann. § 17-25-305 was correct and that there was not substantial evidence in the record to support the Board's finding. Finally, Pegasus argues that the Board's decision was not motivated by its interest in protecting the public health and safety, but instead was motivated by its interest in protecting general contractors.

Despite the fact that both parties cite the standard of review and, presumably, understand that we only review the Board's decision rather than the circuit court's decision, both parties direct most of their arguments and brief space to a discussion of what the circuit court decided when reversing the Board's decision. This is completely incorrect, as our review is to the Board's decision rather than the circuit court's decision. *See Smith, supra.* The posture of this case on appeal is similar to that in *Smith.* In *Smith,* the State Police Commission ruled to terminate the employment of an Arkansas State Police Officer for violations of the code of conduct. On appeal to the circuit court from the Commission's decision, the circuit court reversed the Commission by finding that there was not substantial evidence to support the officer's termination. The circuit court also placed the officer on six-month suspension and directed that the officer be reinstated after the suspension was over. The Commission appealed to this court, and on review, we only looked to the Commission's decision to determine whether there was substantial evidence to uphold the Commission's decision and to decide whether the Commission's decision was arbitrary and capricious. We did not review the circuit court's decision or any findings or interpretations made by the circuit court.

This is important to note because the circuit court's decision in this case is based on statutory interpretation not included in or ruled upon in the Commission's decision. While the board members very briefly discussed the Board's duty to the public, there was no ruling on whether "misconduct" was connected to any statutory provision regarding the "public health and safety" as discussed by the circuit court. Rather, the Board found the following in its decision:

## FINDINGS OF FACT

1. The Pegasus Renovation Company is a licensed contractor in the State of Arkansas.

2. The Pegasus Renovation Company entered bids on at least three separate projects and thereafter failed and refused, without good cause, to perform the work on said projects.

3. The Pegasus Renovation Company is guilty of misconduct in the conduct of the contractor's business in violation of Ark. Code Ann. § 17-25-308.

## CONCLUSIONS OF LAW

The Pegasus Renovation Company is guilty of violating Section 17-25-308, "misconduct in the conduct of the contractor's business".

## ORDER

1. The Board voted three to one with one abstention to revoke the license of The Pegasus Renovation Company.

Under the standard of review, we review this order and the entire record, giving the evidence its strongest probative force in favor of the agency's ruling, to ascertain whether there is substantial evidence to support the agency's decision or whether the agency's decision runs afoul of one of the other criteria set out in Ark. Code Ann. § 25-15-212(h). *Ward, Inc., supra; Carlson, supra.; Desiderata, supra.*

■ ■ This case deals with the revocation of a contractor's license. Ark. Code Ann. § 17-25-308, entitled "Grounds for Revocation," is the statutory provision detailing the requirements for revocation of a contractor's license. This statute states:

> The board shall have the power to revoke the certificate of license of any contractor licensed under this chapter who is found guilty of any fraud or deceit in obtaining a license or for aiding or abetting any contractor or person to violate the provisions of this chapter or for gross negligence, incompetence, or misconduct in the conduct of the contractor's business.

Clearly, this statute lays out the only reasons the Board could revoke a contractor's license, and here the Board chose the last provision requiring "misconduct in the conduct of the contractor's business." "Misconduct" is not defined in the statutory provisions regarding contractor licensing. It also appears that this court has not defined the term in the context of revocation cases. However, "misconduct" is defined by *Black's Law Dictionary* as "a dereliction of duty; unlawful or improper behavior." *Black's Law Dictionary* 1013 (7th ed. 1999).[1]

■ While we do not review the circuit court's decision, for clarity's sake it should be noted that the circuit court referred to Ark. Code Ann. § 17-25-305 (Repl. 1995) to create a basis for reversal of the Board's decision. The circuit court determined that the Board should refer to the terms in this statute to determine whether a license should be revoked under Ark. Code Ann. § 17-25-308. The statute states in pertinent part:

> (a) The Contractors Licensing Board, in determining the qualifications of any applicant for an original license or any renewal license, shall, among other things, consider the following:
>
> (1) Experience;
>
> (2) Ability;
>
> (3) Character;
>
> (4) The manner of performance of previous contracts;
>
> (5) Financial condition;
>
> (6) Equipment;
>
> (7) Any other fact tending to show ability and willingness to conserve the public health and safety; and

---

[1] At the hearing before the Board, in briefs to the circuit court, and on appeal here, Pegasus attempts to argue that this statute is unconstitutional because it is vague, thus voiding the revocation statute. However, this argument is not preserved for review because Pegasus did not get a ruling on it from the Board, and, while it does not matter for our review, the circuit court specifically declined to rule on the issue of the constitutionality of the statute as well. It is well settled that to preserve arguments for appeal, even constitutional ones, the appellant must obtain a ruling below. *Barclay v. First Paris Holding Co.*, 344 Ark. 711, 42 S.W.3d 496 (2001); *Wilson v. Neal*, 332 Ark. 148, 964 S.W.2d 199 (1998). Accordingly, we must reject this argument without reaching the merits.

(8) Default in complying with the provisions of this chapter or any other law of the state.

Ark. Code Ann. § 17-25-305(a). The clear language of the statute indicates that these elements should be used by the Board to decide when to issue an original license or renew a license. The statute does not state that they will be used to determine if "misconduct" has occurred when considering "revocation" of a license. Thus, by the plain language of the statute, it is clear that the circuit court erred in using these elements, particularly section (7), to determine that "misconduct" is determined by a contractor violating the "public health and safety." This statute and Ark. Code Ann. § 17-25-308 contain different provisions and requirements for different circumstances and should not be applied interchangeably.

■ ■ As such, our standard of review requires us to only determine whether substantial evidence supports the Board's decision, and whether the decision is arbitrary, capricious, or characterized by an abuse of discretion. *McQuay, supra*. Substantial evidence is defined as:

> [V]alid, legal, and persuasive evidence that a reasonable mind might accept as adequate to support a conclusion, and force the mind to pass beyond conjecture. The challenging party has the burden of proving an absence of substantial evidence. To establish an absence of substantial evidence to support the decision the challenging party must demonstrate that the proof before the administrative tribunal was so nearly undisputed that fair-minded persons could not reach its conclusion. The question is not whether the testimony would have supported a contrary finding but whether it supports the finding that was made. It is the prerogative of the agency to believe or disbelieve any witness and to decide what weight to accord the evidence.

*Smith*, 338 Ark. at 362 (citations omitted). Pursuant to this definition, we cannot say that the Board erred in concluding that the conduct about which three general contractors complained amounted to "misconduct" under the revocation statute. The proof before the Board was undisputed. Pegasus failed to honor three bids, one of which was an actual contract, causing each general contractor to have to turn to another bidder at substantially higher cost. The letters written by Pegasus not only did not give any defendable reason for the failure to follow through on the bids, but failed in any way to attempt to work out an alternative option for resolution, particularly on the actual contract with Flynco, Inc. In

fact, Pegasus specifically stated in its letters to these general contractors that its decisions were "non-negotiable" and that it would "accept no calls" on the matters, thus eliminating any effective mode of communication to resolve the problems. Furthermore, at the hearing, the evidence offered by the Board's attorney went unchallenged by Pegasus, and Pegasus offered no evidence regarding any defense as to why it could not follow through on the bids or contract. Instead, the evidence only points to Pegasus's failure to honor its promises and contract or provide any defense for its failure to do so.

In *Smith, supra,* the court also outlined our rule regarding the determination of whether an administrative action is arbitrary and capricious. The court stated:

> Administrative action may be regarded as arbitrary and capricious where it is not supportable on any rational basis. *Partlow, supra.* To have an administrative action set aside as arbitrary and capricious, the party challenging the action must prove that it was willful and unreasoning action, without consideration and with a disregard of the facts or circumstances of the case. *Partlow, supra.* We have stated that the requirement that administrative action not be arbitrary and capricious is less demanding than the requirement that it be supported by substantial evidence. *Beverly Enter.-Ark., Inc. v. Arkansas Health Servs.,* 308 Ark. 221, 824 S.W.2d 363 (1992). An action is not arbitrary and capricious simply because the reviewing court would act differently. *McQuay, supra.* Finally, we have held that once substantial evidence is found, it automatically follows that a decision cannot be classified as unreasonable or arbitrary. *Wright v. Arkansas State Plant Bd.,* 311 Ark. 125, 842 S.W.2d 42 (1992).

*Smith,* 338 Ark. at 363. As noted, if we find that the Board's decision is supported by substantial evidence, then the decision cannot be arbitrary and capricious. Furthermore, the Board's decision is supported by a rational basis in that the Board is bound to regulate the profession, protecting not only the public at large, but even the general contractors who rely on these subcontractors for bids. A subcontractor who does not follow through, without a defendable reason, with the bids it makes can cause a domino effect of substantial proportion, perhaps jeopardizing immediate and future projects for that subcontractor itself, the general contractor, other subcontractors relying on the work from a project, and the customer. Clearly, despite Pegasus's argument that the Board was only protecting the general contractor, many people rely on one subcontractor's representation that it will follow through on its bids

and contracts. This is a rational basis for the Board to revoke a license.

The Saline County Circuit Court's decision is reversed. The Arkansas Contractor Licensing Board's decision is affirmed.

GLAZE, J., concurs.

IMBER, J., not participating.

TOM GLAZE, Justice, concurring. I join in the result reached by the majority because there is unquestionably substantial evidence to support the decision rendered by the Arkansas Contractors Licensing Board. However, I am unclear what standard of review the majority is using to reach its decision in affirming the Board.

Obviously, if the Board based its decision on substantial evidence (which we opine it did), the Board's decision could not be arbitrary, capricious, or an abuse of discretion. *E.g., see* the Arkansas Administrative Procedure Act, Ark. Code Ann. § 25-15-212(h)(5) and (6); *see also Wright v. Arkansas State Plant Board*, 311 Ark. 125, 842 S.W.2d 42 (1992). If the issue on review was whether the Board's action was arbitrary, capricious, or an abuse of discretion (not substantial evidence), the review of the Board's ruling becomes a closer question. Then the question is whether the Board's action need only be supported on any rational basis. Someday the court needs to address these two different standards and decide which one applies when reviewing administrative agency decisions.