Robert L. KALE, M.D. *v.*
ARKANSAS STATE MEDICAL BOARD

05-1401                                                238 S.W.3d 89

Supreme Court of Arkansas
Opinion delivered June 29, 2006

[Rehearing denied September 7, 2006.]

*Sam Sexton, III*, for appellant.

*Hope, Fuqua & Campbell, P.A.*, by: *William H. Trice, III*, for appellee.

BETTY C. DICKEY, Justice. Robert L. Kale, M.D., appeals an order of the Sebastian County Circuit Court, finding that there was substantial evidence, in testimony and the record, to substantiate the decision of the Arkansas State Medical Board (the Board) that Dr. Kale was subject to, and violated, Regulation 19 of the Board. On appeal, Dr. Kale argues that (1) the Board's construction of Regulation 19, making it applicable to Dr. Kale, is inconsistent with the plain language of Regulation 19; and (2) the circuit court erred in awarding certain costs to the Board for copying charges of medical records that were, by agreement of the parties, not part of the record on appeal. Considering the deference given to administrative agencies, this court affirms the first point on appeal. However, we find that the circuit court erred in awarding certain costs to the Board.

Dr. Kale operated a medical practice in Fort Smith, operating under the name "Physician Acupuncture and Medical Pain Management Clinic." On August 20, 2002, Dr. Kale was charged by the Board with violating Board Regulation 2.4, and an emergency order of suspension of Dr. Kale's license was issued. The

claim against Dr. Kale was amended to include violations of Regulation 2.6 and Regulation 19.[1]

After a hearing, the Board found Dr. Kale guilty of a violation of Regulation 19 and not guilty of a violation of Regulations 2.4. and 2.6. Regulation 19 concerns the operation of pain management programs. Dr. Kale was ordered by the Board to pay the costs of the investigation and to submit to monitoring of his treatment of patients if he operated a pain management program in the future.

Dr. Kale filed a petition for review in the Sebastian County Circuit Court. The circuit court remanded the matter back to the Board while reserving jurisdiction over the appeal pending completion of those further Board proceedings. Upon completion, the court affirmed the action taken by the Board and assessed certain costs against Dr. Kale. Dr. Kale then filed the appeal before us now.

The standard of review regarding administrative decisions is well developed, and we have outlined this standard on numerous occasions. In *Arkansas Contractors Licensing Board v. Pegasus Renovation Co.*, 347 Ark. 320, 64 S.W.3d 241 (2001), we stated:

> The appellate court's review is directed not toward the circuit court, but toward the decision of the agency. That is so because administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts, to determine and analyze legal issues affecting their agencies. Our review of administrative decisions is limited in scope. Such decisions will be upheld if they are supported by substantial evidence and are not arbitrary, capricious, or characterized by an abuse of discretion.

*Id.* (internal citations omitted).

These standards are consistent with the provisions of the Administrative Procedure Act at Arkansas Code Annotated § 25-15-201 to 25-15-214 (Repl. 2002): [R]eview is limited to ascertaining whether there is substantial evidence to support the agen-

---

[1] Regulation 2.4 governs prescribing excessive amounts of controlled substances; Regulation 2.6 governs failing to comply with certain requirements in prescribing medicine for more than six months for pain not associated with malignant or terminal illness.

cy's decision or whether the agency's decision runs afoul of one of the other criteria set out in section 25-15-212(h). *Ark. Prof'l Bail Bondsman Licensing Bd. v. Oudin*, 348 Ark. 48, 54, 69 S.W.3d 855, 859 – 60 (2002); *Ark. Contractors Licensing Bd. v. Pegasus Renovation Co.*, 347 Ark. at 326, 64 S.W.3d at 244-45. Arkansas Code Annotated § 25-15-212(h) provides that this court may reverse or modify the Board's decision if the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by other error or law; (5) not supported by substantial evidence of record; or (6) arbitrary, capricious, or characterized by abuse of discretion. Ark. Code Ann. § 25-15-212(h). In making this determination, we review the entire record and give the evidence its strongest probative force in favor of the agency's ruling. *Ark. Prof'l Bail Bondsman Licensing Bd. v. Oudin, supra.* "[B]etween two fairly conflicting views, even if the reviewing court might have made a different choice, the board's choice must not be displaced." *Id.* (quoting *Ark. Contractors Licensing Bd. v. Pegasus Renovation Co.*, 347 Ark. at 327, 64 S.W.3d at 245).

For his first point on appeal, Dr. Kale does not argue that the Board's decision was not supported by substantial evidence, only that Regulation 19 is not applicable to Dr. Kale's treatment of patients because subpart (A) of the regulation states that the regulation applies to "[p]hysicians operating a pain management program for specific syndromes . . . that is headache, low back pain, pain associated with malignancies, or temporomandibular joint dysfunctions . . . ." Dr. Kale contends that the language in subpart (A) limits the scope of the regulation and excludes its applicability in the instant case because Dr. Kale did not treat the specific syndromes listed and did not operate a pain management "program." In addition, Dr. Kale argues that he did not have fair warning that Regulation 19 applied to his practice and that it is void for vagueness as applied to him. The Board asserts that there was enough evidence, through admissions made by Dr. Kale and the expert testimony of Dr. Warren Boop, to support the Board's interpretation that the regulation applied to Dr. Kale and that he violated the same.

We start with the long-standing proposition that an agency's interpretation of its own rules is highly persuasive. *Sparks Reg'l Med. Ctr. v. Ark. Dep't of Human Servs.*, 290 Ark. 367, 719 S.W.2d

434 (1986). This court may reject an agency's interpretation of its own rule if the interpretation is irreconcilably contrary to the plain meaning of the rule. *Burlington Indus. v. Pickett*, 336 Ark. 515, 988 S.W.2d 3 (1999). However, an administrative agency's interpretation of its own rule will ordinarily be upheld unless it is clearly wrong. *Ark. Prof'l Bail Bondsman Licensing Bd. v. Oudin, supra.*

Regulation 19 of the Arkansas State Medical Board states in pertinent part:

A. Physicians operating a pain management program for specific syndromes . . . that is headache, low back pain, pain associated with malignancies, or temporomandibular joint dysfunctions . . . are expected to meet the standards set forth in this section or in fact be in violation of the Medical Practice Act by exhibiting gross negligence or ignorant malpractice.

B. Definitions:

1. Chronic Pain Syndrome: Any set of verbal and/or nonverbal behaviors that: (1) involves the complaint of enduring pain, (2) differs significantly from a person's premorbid status, (3) has not responded to previous appropriate medical and/or surgical treatment, and (4) interferes with a person's physical, psychological and social and/or vocational functioning.

2. Chronic Pain Management Program provides coordinated, goal-oriented, interdisciplinary team services to reduce pain, improving functioning, and decrease the dependence on the health care system of persons with chronic pain syndrome.

Dr. Kale focuses his argument on subpart (A) of Regulation 19, arguing that he did not run a pain management "program," and that he did not treat the "specific syndromes" listed. The Board argues that Dr. Kale did not consider that subpart (B) provides specifically how the Board defines chronic pain syndrome in regard to pain management, and asserts that the syndromes listed in subpart (A) were included to provide examples. Dr. Kale's claims do not demonstrate that the Board's interpretation of the regulation is clearly wrong.

The Board relied in part on the testimony of Dr. Warren Boop. Dr. Boop graduated from the University of Tennessee, completed a neurosurgical residency at the University of Minnesota, served as director of the pain program of the Arkansas

Rehabilitation Institute, and had given testimony before the Board in previous hearings regarding the prescribing of pain medication and management and treatment of chronic pain. Dr. Boop opined that anyone who treats chronic pain patients on a regular basis is subject to Regulation 19. While the regulation might have been more clearly interpreted if the words 'such as' were used in place of 'that is,' we do not find error in the Board's interpretation of the language as being merely examples.

Furthermore, regardless of which interpretation is considered more accurate, Dr. Boop's review of Dr. Kale's patients revealed that several of the patients were, in fact, treated for chronic low back pain. Low back pain was specifically listed in subpart (A) of the regulation. H.H., C.M., and K.V. were all treated specifically for chronic low back pain; R.L. was treated for chronic neck and chronic low back pain; and D.D. was treated for a mild disk degeneration causing low back pain. Dr. Kale testified that he did not recall treating a headache, nor did any of his files that were reviewed deal with malignancies or temporal mandibular joint dysfunctions. However, Dr. Kale stated that several of his patients had low back pain for which he rendered treatment. Furthermore, Dr. Boop found that several of Dr. Kale's patients had suffered from depression and did not receive referrals or treatment from a psychologist. He opined that failing to use an interdisciplinary approach to pain management was a direct violation of Regulation 19.

While Dr. Kale argues that he did not run what he considered to be a pain management "program," his letterhead specifically reads "Physician Acupuncture and *Medical Pain Management Clinic*," and he admitted that his practice concentrated entirely on pain management. We do not find the Board unreasonable for interpreting the letterhead as advertising a pain management program, regardless of the fact that the word clinic is used in place of program. Dr. Kale also admitted that he did not practice in conjunction with any other physicians, but was a solo practitioner. The Board interprets Regulation 19 to be applied to anyone who treats chronic pain patients on a regular basis. Dr. Kale advertised his business as a pain management clinic and treated several patients complaining of pain, including patients concerned with low back pain. We do not find that the Board's interpretation of the regulation, or applying it to Dr. Kale, was clearly wrong.

Dr. Kale further argues that, even if the Board was not clearly wrong in its interpretation, he did not have fair warning that Regulation 19 applied to his practice and, therefore, it is void for vagueness as applied to him and violates his right to due process. When challenging the constitutionality of a statute[2] on the grounds of vagueness, the individual challenging the statute must be one of the "entrapped innocent," who has not received fair warning; if by his action, that individual clearly falls within the conduct proscribed by the statute, he cannot be heard to complain. *Graham v. State*, 365 Ark. 274, 229 S.W.3d 30 (2006); *Reinert v. State*, 348 Ark. 1, 5, 71 S.W.3d 52, 54 (2002); *Vickers v. State*, 313 Ark. 64, 852 S.W.2d 787 (1993). As noted previously, the record reveals that Dr. Kale treated patients for chronic low back pain. Because Dr. Kale treated low back pain, conduct that is specifically proscribed unless a doctor meets the additional requirements set out in the regulation, he lacks standing to raise the argument that the regulation is void for vagueness.

For his second and final point on appeal, Dr. Kale contends that the circuit court erred in awarding costs to the Board for copying charges of certain medical records, pursuant to Arkansas Code Annotated § 25-15-212 (Repl. 2002). Dr. Kale contends that both parties agreed that certain medical records would not be part of the record on appeal and he should not be charged for copying charges of documents that were not a part of the record filed on appeal in the circuit court. We agree.

This point on appeal is a matter of statutory interpretation. We review issues of statutory interpretation *de novo. McLane Southern, Inc. v. Davis*, 366 Ark. 164, 233 S.W.3d 674 (2006). Ark. Code Ann. § 25-15-212(d) provides in part:

> (2) The cost of the preparation of the record shall be borne by the agency. However, the cost of the record shall be recovered from the appealing party if the agency is the prevailing party.
>
> (3) By stipulation of all parties to the review proceeding, the record may be shortened. Any party unreasonably refusing to stipulate to limit the record may be taxed by the court for the additional costs.

---

[2] Under Ark. Code Ann. § 5-1-102(20) (Repl.1997), the term "statute" includes the constitution and any statute of this state, any ordinance of a political subdivision of this state, and any rule or regulation lawfully adopted by an agency of this state.

While certain medical records were used as part of the evidence when Dr. Kale appeared before the Board, the parties agreed that the medical records would not be filed with the circuit court on appeal. Although there is no evidence in the record as to when the agreement was made, the order of the circuit court indicates that both parties did agree that the medical records were not to be filed as part of the record. The record that the Board filed with the court did not include medical records. However, the Board argued to the circuit court that it had already copied the medical records at the time both parties agreed not to include them in the record on appeal. The circuit court ordered Dr. Kale to pay costs of copying, noting in its order that the agreement between the parties did not extend to "an extra copy."

Section 25-15-212(d) specifically states that only the cost of the *record* shall be recovered from the appealing party. There is no indication that the medical records were ever included in the actual record filed on appeal. In fact, pursuant to section 25-15-212(d)(3), had Dr. Kale refused to cooperate and agree to shorten the record, he would have been taxed with the additional cost regardless of the outcome. It would be absurd to still tax Dr. Kale, when the record was shortened by agreement. Therefore, the assessment of costs to Dr. Kale should be reduced in the amount of $3,646.73.

Affirmed in part; reversed in part.