TRI-COUNTY SOLID WASTE DISTRICT; George Zeiler,
Evelynn Benbry, Carl Totemeier, and Gary Escalanta  v.
ARKANSAS POLLUTION CONTROL and ECOLOGY
COMMISSION; Waste Management Tontitown Landfill, LLC

05-589                                              230 S.W.3d 545

Supreme Court of Arkansas
Opinion delivered March 2, 2006

*Perkins & Trotter, PLLC,* by: *G. Alan Perkins,* and *Julie DeWoody Greathouse,* for appellant Tri-County Solid Waste District.

*The Evans Law Firm, P.A.,* by: *Marshall Dale Evans* and *Stephanie Dzur,* for intervenors/appellants George Zeiler, Evelynn Benbry, Carl Totemeier, and Gary Escalanta.

*Yeatman & Associates, P.A.,* by: *Gregory L. Yeatman* and *Jillian E. Thayer,* for intervenor/appellant WM Tontitown Landfill, LLC.

*Mike Beebe,* Att'y Gen., by: *Kendra Akin Jones,* Ass't Att'y Gen. and *Charles Moulton,* Senior Ass't Att'y Gen., for appellee Arkansas Pollution Control and Ecology Commission.

Том GLAZE, Justice. This appeal involves the statutes and regulations that govern appeals of landfill permitting decisions. Appellee Waste Management Tontitown Landfill ("Waste Management") holds a permit for the Class 1 solid waste disposal facility in Washington County. The Tri-County Solid Waste District Board ("the Board"), one of the appellants in this case, is the governing body of the Regional Solid Waste Management District where the landfill is located.[1]

We briefly set out here the procedural background of Waste Management's CON application; the various decisions by the several reviewing bodies will be discussed in more depth below. Pursuant to Ark. Code Ann. § 8-6-706(b)(1) (Repl. 2000) and Arkansas Pollution Control and Ecology Commission Regulation

---

[1] The other appellants in this case — George Zeiler, Evelynn Benbry, Carl Totemeier, and Gary Escalanta ("the Zeiler appellants" or "the intervenors") — were granted intervenor status in this case pursuant to Arkansas Pollution Control and Ecology Commission Regulation 8, Part 2.5.3(a)(1), which allows "[a]ny person who submitted comments during the public comment period . . . [to] petition . . . for permissive intervention in an adjudicatory hearing on a permitting decision."

8, Part 22.205(a), an applicant for a permit to expand the permitted capacity of an existing landfill must obtain a Certificate of Need (CON) from the regional board with jurisdiction over the proposed site. On April 10, 2001, Waste Management filed an application with the Board for a CON, seeking permission to expand the Tontitown Landfill. In May and July of 2001, the Board held public hearings on Waste Management's application. Although the Tri-County Solid Waste District staff recommended approving the CON, and a resolution was introduced at the July 19, 2001, hearing favoring Waste Management's application, the Board failed to pass the resolution.

The Board formally denied Waste Management's application by letter dated July 20, 2001. In that letter, the Board found that the District's regional planning strategy did not include the development of any additional landfill capacity in the District. In addition, the Board stated that the area's geology was unsuitable for an expanded landfill.

On August 17, 2001, Waste Management appealed the Board's decision to the Director of the Arkansas Department of Environmental Quality (ADEQ). Under Ark. Code Ann. § 8-6-706(c) (Repl. 2000), the Director "may issue a permit despite the denial of a [CON] if the director finds upon appeal that the decision of the regional board was not supported by substantial evidence." After conducting a hearing on November 14, 2001, ADEQ Interim Director Richard Weiss determined that the Board's decision appeared to have been based on its opinion as to the geology of Northwest Arkansas, and not on the statutory criteria set out in Ark. Code Ann. § 8-6-706(b)(2) (Repl. 2000). Because the Board did not follow the statutory criteria, Weiss concluded that the Board did not base its decision to deny the CON on substantial evidence. Accordingly, Weiss reversed the Board's decision to deny Waste Management's application for a CON; the Director's decision permitted Waste Management to proceed with the permit application process.

On June 19, 2002, the Board asked the Pollution Control and Ecology Commission ("the Commission") to review the Director's decision. *See* Ark. Code Ann. § 8-4-201(b)(8) (Repl. 2000). The Commission directed an Administrative Hearing Officer (AHO) to conduct a hearing on the Board's request for review. The AHO took no additional evidence, but based its decision on the administrative record before it. On June 19, 2003, the AHO issued a Recommended Decision to affirm the Direc-

tor's reversal of the Board's denial of Waste Management's CON application. The full Commission adopted the AHO's Recommended Decision on September 26, 2003.

The Board appealed the Commission's ruling to the Washington County Circuit Court. After a hearing on May 10, 2004, the circuit court entered an order on February 4, 2005, upholding the Commission's decision affirming the Director's decision to reverse the Board's denial of the CON.

We must first decide which decision is on review in this appeal — the Board's ruling or the Commission's. The Board and the Zeiler appellants ask this court to review the initial decision of the Board; Waste Management and the Commission, on the other hand, assert that we can only review the Commission's decision. Once that question is decided, we must then determine the appropriate standard of review. Following that, we may decide whether to affirm the order being reviewed.

The process by which this case has reached this court is somewhat convoluted. As mentioned above, Waste Management applied for a CON pursuant to § 8-6-706(b)(1). Following the Board's decision to deny the application for a CON, Waste Management then appealed to the Director of ADEQ under § 8-6-706(c), which permits the Director to reverse the Board's decision if the Director finds that the Board's decision was not supported by substantial evidence.

Next, the Board petitioned the Commission for review of the Director's decision pursuant to Ark. Code Ann. § 8-4-201(b)(8) (Repl. 2000), which charges the Commission with the "power[ ] and dut[y] [to] . . . [,] [u]pon a majority vote, initiate review of any director's decision." The review of the Director's decision was also undertaken pursuant to Commission Regulation 22,[2] which sets out the process for appeals. In addition to the statutory processes described above, the Commission's Regulation 22.206(e) provides as follows:

(1) After considering all relevant evidence presented in the appeal, the Director shall determine whether the decision of the

---

[2] Under § 8-4-201(b)(3), the Commission is given the power to "[p]romulgat[e] . . . rules and regulations governing administrative procedures for challenging or contesting department actions."

board is supported by substantial evidence. His decision shall be based upon the factors set out in [Ark. Code Ann.] § 8-6-806 and upon any other relevant factors.

(2) The Director shall issue his decision in writing and shall serve a copy of the decision upon the party filing the appeal and upon the board. The parties involved in the appeal of the district board decision may request Commission review of the Director's decision.... [T]he appeal to the Commission shall be conducted in the form and manner in accordance with the requirements of Regulation 8, Part 2.5 Practice and Procedure, for adjudicatory hearings before the Commission.

In turn, Regulation 8, Part 2.5 sets out the procedure by which appeals to the Commission are taken. Of particular interest for the present case are Part 2.5.8, which provides that the "Administrative Hearing Officer appointed by the Commission shall preside over all adjudicatory hearings," and Part 2.5.16, which governs the conduct of adjudicatory hearings and specifically provides that "[t]he standard of review in an adjudicatory hearing is a preponderance of the evidence." Once the AHO has heard the evidence, Part 2.5.17 provides that the AHO "shall issue a written Recommended Decision to the Commission for action at a regularly scheduled meeting."

Commission review of the AHO's Recommended Decision is governed by Part 2.5.18, which provides in relevant part as follows:

(a) Commission review of any appealed or contested matter shall be a *de novo* review of the record compiled by the Administrative Hearing Officer.

. . . .

(d) The Commission's vote to affirm or reverse the Recommended Decision shall constitute final Commission action for purposes of appeal.

The appellate process from this point is controlled by Ark. Code Ann. §§ 8-4-223 to -229 (Repl. 2000), which generally provide that appeals from a Commission decision shall be taken to the "circuit court of the county in which the business, industry, municipality, or thing involved is situated." Ark. Code Ann. § 8-4-223(a)(1) (Repl. 2000). Ark. Code Ann. § 8-4-227 (Repl. 2000) sets out the following process for review by the circuit court:

(d) The court may affirm *the decision of the commission* or vacate or suspend the decision, in whole or part, and remand the case to the commission for further action in conformity with the decision of the court if the action of the commission is:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the commission's statutory authority;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Not supported by substantial evidence of record; or

(6) Arbitrary, capricious, or characterized by abuse of discretion.

(Emphasis added.)

█ It is plain from this examination of the statutory and regulatory procedures that the decision before this court is the decision of the Commission, and not the initial decision of the Board. Under the plain language of the above-cited statutes, the only decision that is ever subjected to judicial review is the decision of the Commission. Case law supports this conclusion, as well. For example, in *Arkansas State Racing Board v. Wayne Ward, Inc.*, 346 Ark. 371, 57 S.W.3d 198 (2001), the original order appealed from was a decision by the Southland Greyhound Park Board of Judges, which redistributed the winning dog's purse because of a violation of the rules prohibiting drug use. The dog's owner appealed the Board's decision to the Arkansas State Racing Commission, which affirmed the Board's decision. The owner then appealed the Commission's decision to the circuit court, which reversed the Commission, finding that the Commission's decision was not supported by substantial evidence. The Commission appealed to this court, which, in keeping with our standard of review for agency decisions, examined the *Commission's decision*, not the Board's decision, to determine whether it was supported by substantial evidence. *Arkansas State Racing Board*, 346 Ark. at 375. *See also Arkansas State Police Comm'n v. Smith*, 338 Ark. 354, 994 S.W.2d 456 (1999) (reviewing and upholding the State Police Commission's decision to terminate a police officer's employment,

where the Commission's action affirmed the decision of the Director of the Arkansas State Police); *Chili's of Jonesboro, Inc. v. State Alcohol Beverage Control Division*, 75 Ark. App. 239, 57 S.W.3d 228 (2001) (decision by the Director of the Alcohol Beverage Control Division was appealed to the Alcohol Beverage Control Board, and from there to the Craighead County Circuit Court; on appellate review, the court of appeals looked to see whether the Board's decision — not the Director's ruling — was supported by substantial evidence).

Accordingly, it is clear that the proper decision for this court to review is the Commission's September 26, 2003, order affirming the ADEQ Director's decision to reverse the Board's ruling denying Waste Management's application for a CON. Because the Commission's order is the one to be reviewed, we are required to do so by determining if its decision is supported by substantial evidence and is not arbitrary, capricious, or characterized by an abuse of discretion. *Pine Bluff for Safe Disposal v. Arkansas Pollution Control & Ecology Comm'n*, 354 Ark. 563, 127 S.W.3d 509 (2003); *Hamilton v. Arkansas Pollution Control & Ecology Comm'n*, 333 Ark. 370, 969 S.W.2d 653 (1998). Moreover, the appellate court's review is directed, not toward the circuit court, but toward the decision of the agency, because administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts, to determine and analyze legal issues affecting their agencies. *Pine Bluff for Safe Disposal, supra.*

In determining whether a decision is supported by substantial evidence, we review the record to ascertain if the decision is supported by relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* In doing so, we give the evidence its strongest probative force in favor of the administrative agency. *Id.* The question is not whether the testimony would have supported a contrary finding, but whether it supports the finding that was made. *Arkansas Bd. of Exam'rs v. Carlson*, 334 Ark. 614, 976 S.W.2d 934 (1998). As is true for any other factfinder, it is the prerogative of the agency to believe or disbelieve any witness and to decide what weight to accord the evidence. *Id.*

Appeals from the decisions of the Arkansas Pollution Control and Ecology Commission are not governed by the procedures established in the Arkansas Administrative Procedure Act. *See* Ark. Code Ann. § 25-15-202(2)(C) (Supp. 2003). Rather, specific procedures are provided in §§ 8-4-222 to -229. Section 8-4-

229(a) provides that in any appeal involving a decision by the Commission, "the action of the commission shall be prima facie evidence, reasonable and valid, and it shall be presumed that all requirements of the law pertaining to the taking thereof have been complied with." All findings of fact made by the Commission shall be prima facie evidence of the matters stated therein. *See* § 8-4-229(b). The burden of proving the contrary rests upon the party challenging the Commission's action. *See* § 8-4-229(c). Thus, to reverse an action of the Commission, it is the appellant's burden to rebut the presumption that the Commission's decision is reasonable and valid and has complied with all the requirements of the law.

With these standards in mind, we turn to the ultimate question presented in this appeal: Was there substantial evidence to support the Commission's decision? We conclude that there was. As noted above, Waste Management filed an application for a CON in April of 2001. According to Section 6.04 of the Regulations of the Tri-County Solid Waste District Board, the Board must consider certain specific criteria when reviewing an application for a CON. Among those criteria are questions regarding 1) whether the proposed facility is consistent with the District's regional planning strategy; 2) whether the proposed facility conflicts with existing comprehensive land-use plans of any local governmental entitles; 3) whether the proposed facility disturbs an archeological site or an endangered species habitat; 4) whether the facility would adversely affect the public use of any local, state, or federal facility, such as a park or wildlife management area; 5) whether the proposed facility conflicts with the requirements of state or federal laws and regulations on the location of disposal facilities; 6) whether, if the proposed facility is located within the 100-year floodplain, it restricts the flow of the 100-year flood, reduces the temporary water storage capacity of the floodplain, or could result in washout of solid waste so as to pose a hazard to human health or the environment; 7) whether the proposed facility is appropriately located given the District's needs and taking into consideration its road system; 8) whether the proposed facility provides landfill disposal capacity needed within the District; 9) the history of the applicant's record with respect to violations of environmental laws and regulations; 10) the service area to be served by the proposed facility; and 11) whether the applicant followed the procedures for obtaining a CON in Subchapter 7.

In its review of Waste Management's application process, the Commission determined that the Board had not considered these statutory criteria. In reaching this conclusion, the Commission reviewed the history of the case, beginning with the May 17, 2001, public hearing, at which Tri-County Solid Waste District Director Steven Parker explained that the Board's review was limited to an evaluation of the *need* for additional landfill capacity, and that it was *not* determining the suitability of a particular site. Parker then discussed each of the above-described criteria, and summarized the District staff's findings that Waste Management's application satisfied those criteria. At the end of the May 17 meeting, the Board agreed to obtain additional information from Waste Management before the next meeting.

At the July 19, 2001, meeting, the District Board accepted public comments, including those from intervenor Zeiler that he was concerned with groundwater contamination and the fact that the area could not, geologically speaking, support a landfill. In addition, intervenor Carl Totemeier spoke against the landfill, urging that the geological formations in the area "are fragile and cannot support a landfill of this size."

After hearing comments, the Board discussed various aspects of the landfill proposal, including the fact that the existing landfill only had approximately one-and-a-half years of additional capacity, and that it would take an additional eighteen months or up to four years for ADEQ to complete the process of finally approving the landfill expansion. It was also noted that ADEQ would require additional geological information, other than what had already been submitted, and that even if the Board approved the CON, the landfill would be at capacity and would close before the application process could be completed. At the conclusion of the meeting, Mayor Van Hoose moved to adopt a resolution approving Waste Management's application for a CON, but the motion failed. The Board's minutes do not reflect that the Board made any specific findings regarding the denial of the application for the CON.

On July 20, 2001, Parker sent a letter on behalf of the Board to Waste Management, notifying Waste Management that the Board had denied its application. The letter noted that the Board denied Waste Management's request "based on its determination that the geology of Northwest Arkansas is unsuitable for development of additional landfill cells." Further, the letter stated that the Board was required to consider "whether the proposed facility is

consistent with the regional planning strategy adopted by the Board in the regional needs assessment or the regional solid waste management plan." The letter then stated that the District's Solid Waste Management Plan stated that the District had completed a landfill siting study in 1997, which concluded that there were no sites within the District suitable for developing a landfill, and that the District would not attempt to locate a landfill within the District's boundaries for the next five years. Therefore, the letter concluded, the request for a CON did not satisfy District Regulation § 6.04(a).

As discussed above, Waste Management appealed the Board's decision to ADEQ Director Weiss, who, according to the Commission's Regulations, was required to consider whether the decision of the board is supported by substantial evidence. Director Weiss determined that the Board's decision was based on its "conclusion that Northwest Arkansas was unsuitable for a landfill due to questionable geology of the region." Weiss wrote further as follows:

> Although their concerns for protecting the environment of Northwest Arkansas are genuine, the issue of geology is not relevant to granting a CON, as defined by the statutory criteria. One Board member indicated that, although there is no question that there is a need for a landfill in Northwest Arkansas, a vote for the CON would be giving ADEQ the Board's "blessing" that the Board supported the granting of a permit to Waste Management. This rationale does not support, with relevant evidence, the Board's decision. Mayor Steve Womack of Rogers accurately stated that the question before the Board was whether the CON should be granted, which is an expression of a need for disposal of solid waste generated by the [Tri-County] Solid Waste District, and that technical and geological issues of permitting a landfill should be left to the expertise of ADEQ. Clearly, the issues of site geology, technical requirements of the landfill site, and potential impacts on human health are appropriate for review during the permitting process, but are not relevant factors in the decision process for granting a CON.

■ The Director's decision additionally pointed out that the District staff had submitted a recommendation that the CON be granted, and that the staff's recommendation contained a full discussion of all of the relevant statutory criteria and concluded that the landfill expansion was consistent with the regional plan-

ning strategy. The Director concluded that the Board's decision was not based on substantial evidence, but on conclusions drawn from the 1997 landfill study that the area was geologically unsuitable. The 1997 study, the Director noted, was *"not relevant to the central issue of 'need,' and should not have been considered by the Board in reaching its decision*[.]" (Emphasis added.) The Director also declared that the Board erred in denying the CON "due to an absence of substantial evidence that its decision was based on the statutory criteria for approving an application for a CON."

When the Board appealed this decision to the Commission, the Commission[3] was required to review the Director's decision under a preponderance-of-the-evidence standard, pursuant to Commission Regulation 8, Part 2.5.16(b). In doing so, the Commission pointed out that the Board was required to issue written findings stating the basis for denying the CON. The Commission noted the Board's finding that the geology of Northwest Arkansas was unsuitable for development of additional landfill cells, but the Commission determined that geology was not among the statutory criteria relevant to a consideration of a CON. *See* Ark. Code Ann. § 8-6-706(d); District Reg. § 6.04. Thus, the Commission correctly concluded that the Board's denial of the CON due to the geology of the area violated District Regulation § 6.04 and was improper under § 8-6-706(d).

The Commission also rejected the Board's contention that it was entitled to rely on the 1997 landfill siting survey. The Board argued that it was proper to consider the study, because the study was an element of the District's Solid Waste Management Plan, and that Plan stated that the District did not have a place for a landfill. However, the Plan itself actually stated that, "[d]uring the next five years, the District will not attempt to locate a *District-owned* Class 1 landfill within the District's boundaries" (emphasis added). Waste Management's Tontitown Landfill, however, is privately owned. Nothing in the Plan appears to restrict development of such privately owned landfills. Accordingly, we conclude that substantial evidence supports the Commission's

---

[3] The initial review was undertaken by the Administrative Hearing Officer; however, as the AHO's Recommended Decision was adopted by the full Commission, we refer to "the Commission" for clarity's sake.

conclusion that the Board was wrong to deny the CON application on the grounds that it was inconsistent with the District's regional planning strategy.

The Zeiler appellants raise one additional issue in their brief, suggesting that the Board should have made more detailed findings of fact in its decision to deny Waste Management's application for a CON, and because the Board failed to do so, this court should remand the matter to the Board for the entry of such findings. Initially, we reject the idea that a remand for further factual findings is necessary; additionally, however, we note that there is no statutory authority that would support a remand to the Board. Under § 8-4-227(d), upon an appeal of a Commission decision, this court may "affirm the decision or vacate or suspend the decision, in whole or in part, and *remand the case to the Commission* for further action in conformity with the decision of the court." (Emphasis added.) Accordingly, there is no merit whatsoever to Zeiler's contention that this case should be remanded to the Board so that the Board can make further findings of fact.

Affirmed.